[No. 8049.  Department Two.  July 29, 1909.]

THE CITY OF SPOKANE, *Respondent*, v. J. R. BAUGHMAN, *Appellant*.[1]

INTOXICATING LIQUORS—SALE WITHOUT LICENSE—CLUBS—FURNISH-ING TO MEMBERS. The serving of intoxicating liquors by a social club exclusively to its members, and not for profit, at a price fixed by the club, which is charged to the account of the members, is a sale within the meaning of an ordinance to regulate the sale of liquors and prohibiting their sale without first obtaining a license; since the matter of making a profit is immaterial and the principal object of the law is regulative.

SAME—BARROOMS—SOCIAL CLUBS. The maintenance by a social club of a room wherein to furnish liquors to members to be drunk on the premises is the conducting of a barroom, within the meaning of an ordinance regulating the liquor business and barrooms, especially where the law makes drug stores the only exception.

Appeal from a judgment of the superior court for Spokane county, Huncke, J., entered October 17, 1908, upon a trial and conviction of selling liquor without a license. Affirmed.

*Graves, Kizer & Graves*, for appellant, cited: Black, Intoxicating Liquors, § 142; *State ex rel. Bell v. St. Louis Club*, 125 Mo. 308, 28 S. W. 604, 26 L. R. A. 573; *State ex rel. Columbia Club v. McMaster*, 35 S. C. 1, 14 S. E. 290, 28 Am. St. 826; *People v. Adelphi Club*, 149 N. Y. 5, 43 N. E. 410, 52 Am. St. 700, 31 L. R. A. 510; *Piedmont Club v. Commonwealth*, 87 Va. 540, 12 S. E. 963; *Koenig v. State*, 33 Tex. Cr. 367, 26 S. W. 835, 47 Am. St. 35; *State v.*

[1]Reported in 103 Pac. 14.

*Austin Club,* 89 Tex. 20, 33 S. W. 113, 30 L. R. A. 500;
*Manassas Club v. Mobile,* 121 Ala. 561, 25 South. 628;
*Cuzner v. California Club* (Cal.), 100 Pac. 868; *Common-
wealth v. Pomphret,* 137 Mass. 564, 50 Am. Rep. 340; *Klein
v. Livingston Club,* 177 Pa. 224, 35 Atl. 606, 55 Am. St. 717,
34 L. R. A. 94; *Seim v. State,* 55 Md. 566, 39 Am. Rep. 419;
*Tennessee Club v. Dwyer,* 11 Lea (Tenn.) 452, 47 Am. Rep.
298; *Barden v. Montana Club,* 10 Mont. 330, 25 Pac. 1042,
24 Am. St. 27, 11 L. R. A. 593; *Graff v. Evans,* L. R. 8
Q. B. D. 373.

*F. D. Allen, Harry A. Rhodes,* and *S. H. Wentworth,* for
respondent, cited: *Martin v. State,* 59 Ala. 34; *Manassas
Club v. Mobile,* 121 Ala. 561, 25 South. 628; *Army and
Navy Club v. District of Columbia,* 8 D. C. App. 544; *Mohr-
mann v. State,* 105 Ga. 709, 32 S. E. 143, 70 Am. St. 74,
43 L. R. A. 398; *South Shore Country Club v. People,* 228
Ill. 75, 81 N. E. 805, 119 Am. St. 417, 12 L. R. A. (N. S.)
519; *Kentucky Club v. Louisville,* 92 Ky. 309, 17 S. W.
743; *State v. Boston Club,* 45 La. Ann. 585, 12 South. 895,
20 L. R. A. 185; *Chesapeake Club v. State,* 63 Md. 446;
*State v. Easton Social L. & M. Club,* 73 Md. 97, 20 Atl.
783, 10 L. R. A. 64, overruling *Seim v. State* on this ques-
tion; *People v. Soule,* 74 Mich. 250, 41 N. W. 908, 2 L. R. A.
494; *State v. Essex Club,* 53 N. J. L. 99, 20 Atl. 769; *State
v. Lockyear,* 95 N. C. 633, 59 Am. Rep. 287; *State v. Neis,*
108 N. C. 787, 13 S. E. 225, 12 L. R. A. 412; *University
Club v. Ratterman,* 2 Ohio C. D. 11, 3 Ohio C. C. 18; *Hermit-
age Club v. Shelton,* 104 Tenn. 101, 56 S. W. 838; *United
States v. Alexis Club,* 98 Fed. 725.

DUNBAR, J.—Defendant was adjudged guilty of a viola-
tion of an ordinance of the city of Spokane forbidding the
sale of intoxicating liquors in such city without procuring a
license therefor, and appeals from a judgment and fine en-
tered thereon.

His liability is based upon the fact that he is steward of

the Spokane Club, a corporation that is alleged to have sold intoxicating liquors in violation of the ordinance in question. The case was heard upon stipulated facts. The appellant presents a condensed statement, which is agreed to by the respondent, and the substance of which is that, in 1890, a number of business and professional men of Spokane formed a voluntary organization under the name of the Spokane Club, the purpose of which was to acquire property and conduct a social club for the accommodation and entertainment of the members of the association. A building was leased and fitted up with dining rooms, sleeping rooms, and rooms where the members met for social enjoyment and entertainment. In 1899 the society was incorporated. It has a resident membership of three hundred, the full number permitted by its by-laws, and a considerable nonresident membership. It has leased a building in which it maintains, for the use of its members and their guests, parlors, bedrooms, reading rooms, writing rooms, billiard rooms, and dining rooms. The monthly expense of the club amounts to $1,500, and such expense is met by the initiation fee charged new members, annual dues, and the charges made against members for the various accommodations, such as meals, cigars, liquors, the use of the billiard tables, bedrooms, etc., furnished them. The affairs of the club are not conducted on a profit-making basis, the charges made for accommodations furnished being intended only to cover the actual expense thereof.

Among other accommodations furnished by the Spokane Club for the use of its members and their guests, both during the life of the voluntary association and after the corporation succeeded to its rights, it has maintained a room in the club quarters, with one of the regular club employees in charge, where cigars, liquors, wines, beers and mineral waters are furnished, at charges from time to time fixed by the board of managers of the club. No money is received by the attendant for goods so furnished, but slips are signed

by the member, showing the character of the goods furnished
and the cost thereof. These slips are turned in by the at-
tendant to the bookkeeper of the club, and are charged to
the account of the member, and in due course are paid by him.
No member of the club can take a resident of the city of
Spokane as his guest into the club rooms. The wines and
liquors furnished by the club are purchased by it in quantities
at wholesale, and the liquor is furnished to the club mem-
bers and their nonresident guests in the quantities and at
the prices usually charged by retail liquor dealers to their
customers. At the price paid for the liquor and at the price
for which it is sold, a profit on the liquor would result to
the club; but since there should be charged against such
profit its proportion of the fixed charges of the club, such as
light, heat, rental, salaries of attendants, etc., there is no
method of determining what proportion should be charged
against it, and it is impossible to determine whether or not
any profit is made on the liquor so furnished. In the year
1890, when the voluntary association was formed, there was
in effect in the city of Spokane the following ordinance:

"An Ordinance in relation to licenses for selling intoxi-
cating liquors at retail.

"The City of Spokane does ordain as follows:

"Section 1. If any person shall, within the limits of the
City of Spokane Falls, sell, dispose of, or for the purpose of
evading the provisions of this ordinance give away any spir-
ituous, malt or fermented liquors, wine or beer in any quan-
tity less than one gallon, without first obtaining a license
therefor, every such person shall be deemed guilty of a misde-
meanor, and, on conviction thereof, shall, for each and every
such offense, be fined in any sum not less than twenty nor
more than fifty dollars, with the costs of prosecution added
thereto.

"Section 2. Any person desiring to keep a drinking shop,
bar room or saloon within the corporate limits of the city of
Spokane, at which spirituous, malt, and fermented liquors
and wines may be sold in less quantities than one gallon, may
apply by petition in writing to the city council at any ses-

sion thereof, which petition must state definitely the building or place where such drinking shop, bar room or saloon is to be kept; and the city council, upon satisfactory proof as to the character of the applicant, may grant to such person a license to be called a retail license, which shall be a sufficient permit to sell liquor at the place so named, not for any other place: *Provided,* That any license that may have heretofore been granted, or that may hereafter be granted, may be transferred with the consent of the city council. No such license shall be granted until such person shall pay the city treasurer the sum of $1,000 for one year's license, and that no license shall be granted for a shorter period than one year, nor shall such license be granted until such person shall have executed a good and sufficient bond, with two or more sureties, to be approved by the mayor, in the sum of one thousand dollars, conditioned that such person shall keep an orderly house, comply with all the requirements of the charter of the city of Spokane, and of the ordinances of said city and the laws of the state of Washington. As amended Sept. 10th, 1907, by Ordinance No. A2999.

"Section 3. Nothing in this ordinance shall be so construed as to restrict the sale by apothecaries or druggists of spirituous, malt or fermented liquors or wines, for medicinal purposes only, upon the prescription of a practicing physician, and no license shall be required therefor.

"Section 4. No license for the sale of intoxicating liquors shall hereafter be granted without the consent, in writing, of the owner or lessor of the building or premises in which the business is to be conducted; and the paper containing such consent shall be kept on file by the officer issuing such license. And all licenses granted under the provisions of this ordinance shall be issued by the city clerk, signed by him in his official capacity, with the seal of the city affixed.

"Section 5. [As amended June 1, 1887, by Ordinance No. 54.] This ordinance shall not be construed or held so as to render invalid any license heretofore issued by any competent authority and yet unexpired.

"Section 6. This ordinance shall take effect and be in force from the time of its passage and publication.

"Passed the City Council February 24, 1886." Ordinance, Spokane, No. 19."

It is conceded that, since the formation of the club, the city has never before demanded the enforcement of the ordinance above quoted as applied to the club. We might say here that the manner of the payment for these liquors by slips is not material to the case, as it is in effect the payment of money for the liquors furnished. In short, it appears that the club under consideration is the ordinary social club common in the cities of the present day, and the sole question presented is, Is the disposition of liquors by this club to its members, in the manner as stated, the selling or disposing of liquors within the meaning of the ordinance quoted? If it is it is conceded by the appellant that the judgment should be affirmed. Upon this question there is a wilderness of conflicting authorities, and argument has been exhausted. But, after an examination of all the authorities available, a review of any great portion of which could not be encompassed within an opinion of reasonable length, we are constrained to adopt the view of a large majority of the cases decided, ·and hold that the transaction stipulated constitutes a sale within the meaning of the ordinance.

A sale has been defined by Kent as an agreement by which one of two contracting parties, called the seller, gives a thing and passes the title, in exchange for a certain price in current money, to the other party, who is called the buyer or purchaser, who on his part agrees to pay such price. It is defined in a more condensed statement by Blackstone as a transmutation of property from one man to another in consideration of some price or recompense in value. These definitions have been received by the courts, and many other definitions have been given of the word "sale," but the essential idea in all of them is that of an agreement or meeting of minds by which a title passes from one and vests in another. When the liquor is bought through the regularly constituted agent of the corporation, it undoubtedly belongs to the corporation, the title as well as the possession being in the corporation, and it remains there until it is transferred

to the buyer for a consideration. Then it becomes the property of the purchaser, and is at his absolute disposal. He can drink it himself, give it to his guest, or throw it away; the corporation has no further interest in it. In other words, it has been paid for, and the transaction, it seems to us, involves all the elements of a sale. The fact that the disposition of the article can only be made to a member of the corporation does not change the character of the transaction; it simply limits the number of transactions. Nor does the fact that the member of the club to whom the sale is made has an interest in the property affect the case. Stockholders in mercantile corporations have the same general interest; but if they were guilty of surreptitiously appropriating the goods of the concern to their own use, the plea of such interest or ownership would not avail them in a prosecution for larceny, even in a business where the stockholders were allowed to purchase the goods of the concern at cost. So that the question of profit is not material.

It is conceded by the appellant that, in a certain sense, a sale is involved in the transaction which is the basis of the complaint in the action, but it is contended that it is not a sale within the meaning of the law. But as we have seen that the word "sale" has a well defined and well understood legal significance, when it is used in statutes, it must be presumed to have been used with respect to such legal definition; otherwise the wildest confusion would be injected into the law, and the courts would find themselves without compass or guide in the construction of statutes. But ordinarily, so far as this particular word is concerned, the legal definition and popular conception are the same, for a man when he buys anything and pays for it and takes it into his possession knows that a sale has been made.

A plausible argument has been presented by learned counsel for appellant to the effect that in states where prohibitory laws exist and the object of the law is prohibition, trans-

21—54 WASH.

.actions of this kind ought to be suppressed as being opposed to the spirit of the law; but that a different construction should be placed upon ordinances where the object sought was revenue only. But the weakness of the argument is in the assumption that revenue is the only object of the law. On the contrary, regulation is the principal object of the law's solicitude. These laws are sustained on the theory of police regulation, and if the regulation which the appellant objects to so seriously, viz., the furnishing proof of character and giving a bond to keep an orderly house and to comply with the requirements of the ordinances, could not be enforced, the city would find itself deprived of the right to regulate the sale of spirituous liquors within its precincts; and it cannot be conclusively presumed that the sale of intoxicating liquors by a social club will not, or may not, need regulation.

Besides, under the plain provisions of the ordinance in question, it was the evident intention to regulate the sale of liquors. The language is sweeping, viz: "If any person shall, within the limits of the city of Spokane Falls, sell, dispose of," etc. It is conceded by counsel for the appellant that the language is comprehensive enough in the first section to embrace the business of his clients, but it is claimed that such language is modified and interpreted by § 2, which indicates that the object of the council in passing the ordinance was to regulate barrooms or saloons where spirituous, malt, and fermented liquors and wines are sold. But the facts stipulated show that the appellant in this action was conducting a barroom, it appearing that the club maintained a room in which liquors were kept with the intent to furnish them to members to be drunk on the premises, and this is the ordinary conception of a barroom. In addition to this, the language of the ordinance is sweeping and the only exception that is made is the exception of a drug store, where liquor is sold for medicinal purposes upon the prescription of a practicing physician. Under such circumstan-

ces the ordinance prescribes that no license shall be required. The requirements of the act being unlimited except as prescribed by the act itself in relation to drugs, we do not feel at liberty to restrict the operation of the act in what seems to us to be its plain intent, viz., to regulate the selling of intoxicating liquors at retail.

Under all the circumstances, we conclude that the ordinance applies to the business carried on by the appellant in this action, and the judgment will therefore be affirmed.

RUDKIN, C. J., PARKER, and CROW, JJ., concur.