# THE CONOCOCHEAGUE CLUB OF WASHINGTON COUNTY *vs.* STATE OF MARYLAND.

*Liquor License Laws: Chapter* 380 *of the Acts of* 1908; *applies to private clubs.*

Chapter 380 of the Acts of 1908, the High License Law of Washington county, in its application, includes private clubs where the liquor sold is to members only, even though the same is not sold at a profit.      p. 327

*Decided June 24th, 1911.*

Appeal from the Circuit Court for Washington County.

The cause was argued before BOYD, C. J., BRISCOE. PATTISON, URNER and STOCKBRIDGE. JJ.

*C. A. Little* (with whom were *J. A. Mason* and *William Wingert* on the brief), for the appellant.

*Isaac Lobe Straus, Attorney-General,* (with whom was *Alexander Armstrong, Jr.,* on the brief), for the appellee.

PATTISON, J.. delivered the opinion of the Court.

The Conococheague Club of Washington County was indicted in the Circuit Court for Washington County for

violation of the Act of 1908, Chapter 380. The indictment contains two counts. In the first the defendant, being at the time a licensee to sell spirituous and fermented liquors under Article 56 of the Code of Public General Laws of the State of Maryland, as therein alleged, is charged with unlawfully selling whiskey without first having obtained a license therefor, as provided by the act above mentioned. The second count is like the first except that the defendant is charged with the sale of lager beer. To the first count of the indictment the defendant pleaded:

"The said The Conococheague Club of Washington County is a corporation formed under the General Incorporation Laws of the State of Maryland. That its charter was granted to it on the second day of November, A. D., 1895. That the said corporation so formed is an association for the maintenance of an association or club for social purposes and for the promotion of the interests of literature, science and art, and to have a clubhouse to be used for the objects above mentioned, that the term of existence of said corporation is limited to forty years, and that the said corporation is formed upon the articles, conditions and provisions herein expressed and subject in all particulars to the limitations relating to corporations which are contained in the General Laws of the State. That the said charter further provides 'that the present members of the said Conococheague Club, and such as may hereafter become members of the same by virtue of the constitution and by-laws thereof, adopted or hereafter adopted shall compose said corporation and exercise the functions and franchises thereof. That the said corporation has no capital stock. That the corporation is managed by a president, vice president, secretary and treasurer and twelve governors elected by the members, all of whom constitute the board of management of said club, and that new members of said club are elected by the board of governors after such new members have been proposed by one member of the club, seconded by another, and after their names have

been posted in the clubhouse for at least ten days. That the said corporation has adopted a constitution and passed certain by-laws for its better government and regulation. That the said corporation is the owner of its clubhouse on West Washington street, in Hagerstown, Maryland, and near the centre of the city, a valuable piece of real estate which it has since its incorporation used and occupied as its home, and for purposes for which it was incorporated. That the said corporation transacts no business of any kind whatever for the purpose of making any profit directly or indirectly for itself or for its members, and that its only income is the money derived from entrance fees, annual dues, money paid for members for such meals, refreshments and liquors as they may get and consume at the clubhouse, and money paid by members of the club for the use and occupation by them of sleeping rooms in said clubhouse and money derived from such additional assessments, fines and penalties as may be from time to time imposed upon the members under its rules and by-laws. That the money received from these various sources is expended in paying the current expense of the corporation, taxes on its clubhouse and keeping the same in proper repair, procuring food refreshments and liquors to take place of that consumed and used by the members in paying the subscriptions for the magazines, periodicals and newspapers kept in the clubhouse for the use of its members and in paying the interest on the indebtedness of the said corporation. That the said meals, liquors and refreshments used and consumed by the said corporation and its members at its clubhouse are bought by the corporation, kept in the clubhouse under the charge of its steward who is an employee of the corporation. That the members of the club can procure from the corporation through its said steward, such meals, liquors, refreshments and the use of such sleeping rooms as they may desire by calling for them and paying the price fixed by the regulations of the corporation, and that the price so paid as fixed, is fixed and paid not for the purpose of making any profit either directly or

indirectly, but merely for the purpose of covering the outlay thereof by the corporation and the expenses attendant upon the keeping and serving thereof at the said ·clubhouse and with the funds received from other sources of the maintaining of said clubhouse and that the funds derived from such furnishing of spirituous and fermented liquors to members as aforesaid is insufficient to pay the cost and service thereof, and that to meet the excess of such costs funds from other' sources must be used.

"That no persons, other than the members of the said club, are given access to said' clubhouse. That no persons other than the members of said club can procure said meals, refreshments, liquors and rooms from the said corporation. That the said corporation previous to this indictment took out the Oysterhouse License provided for in section 102 of Article 56 of the Code of 1904, which was in force at the time of said indictment. That at the time and place stated in the said indictment, the said Joseph C. Byron was a member of the said Conococheague Club, and as such procured a drink of whiskey from the steward, drank it then and there and paid the price therefor fixed by the corporation."

To the second count the defendant pleaded a like plea, the only difference being that, in the second plea the admission is that the member procured *beer* from the defendant, as· charged in that count.

To these pleas the State demurred. The demurrer was sustained and a judgment thereon entered for the State, and the defendant was sentenced to pay a fine of one hundred dollars and costs.

The statute, for the violation of which the defendant is indicted, provides that: "It shall not be lawful for any person or persons to sell spirituous, fermented or intoxicating liquors in Washington county, State of Maryland," until he shall have complied with the conditions and requirements contained therein, and shall have obtained a license therefor from the clerk of the Circuit Court for Washington County. The cost of such license, "if the proposed place of sale is

located in Hagerstown or within one and one-half miles of the corporate limits thereof," being "the sum of five hundred dollars in addition to the sum required by law to sell such liquors under the provisions of Article 56 of the Code of Public General Laws of the State of Maryland."

Section 325E of the above-mentioned act, near the end thereof, provides that "It is the intention of this act that licensees to sell spirituous and fermented liquors under Article 56 of the Code of Public General Laws of the State of Maryland * * * shall in all respects be subject to the conditions, provisions and penalties of this act."

Section 102 of Article 56 of the Code of Public General Laws of the State of Maryland (Acts of 1890, Chapter 282, section 89A) thus referred to, provides: "It shall not be lawful for any *club* or for any *corporation* heretofore formed or hereafter to be formed under the General Laws of this State or under any special law, to give, barter or sell spirituous or fermented liquors or lager beer to any member of said club or corporation, or to any other person, without having first taken out an oyster-house license therefor."

The oyster-house license referred to in the section last above mentioned is provided for by sections 90 and 91 of Article 56, which are as follows:

"90. If any person shall purpose to open, set up or keep an oyster-house, cook-shop, victualling-house or lager beer saloon, or any place other than an ordinary, at or in which spirituous or fermented liquors or lager beer may be sold or bartered in less quantities than a pint, at any one time, he shall apply to the Clerk of the Circuit Court for the county in which he may reside."

"91. Upon such application the said applicant shall pay to the Clerk of the Circuit Court of the county where he resides, * * * the sum of fifty dollars for each and every such license."

It is contended by the defendant that by the facts pleaded it is not required by the Act of 1908, Chapter 380, under which it is indicted, to obtain the license therein mentioned

.in order to enable it to legally dispose of, to its members,
spirituous or fermented liquors in the manner mentioned in
the plea, for the reason that such a disposition of it is not
a sale within the meaning of the statute, and it is not a
licensee within the meaning of section 325 E, Chapter 380
of the Acts of 1908. While, on the other hand, it is con-
tended by the State that a disposition of it in the manner
stated in the plea is a sale of the same within the meaning
of the act, and that the defendant comes within the meaning
of the statute and is required to take out the license therein
mentioned before it can legally dispose of the spirituous and
fermented liquors in the manner pleaded, and that the nec-
essity for so doing is made certain by that part of section
325 E above quoted.

In the case of *Seim et al.* v. *State,* 55 Md. 566 (decided
March 16th, 1881), in which the defendant, the officer of a
corporation known as the Concordia, incorporated under the
General Incorporation Laws of this State, were charged with
selling beer in violation of Article 30, section 179 of the
Code, as amended and re-enacted by the Acts of 1866, Chap.
66, this Court, upon a statement of facts submitted to it,
similar to those contained in the defendant's plea herein,
held that the transaction was not a sale of beer within the
intent and meaning of the Acts of 1866 and that it had no
application to cases like the one before it. The Court in
that case said: "It will be observed that the license laws,
Code, Article 57, which forbid the sale or barter of spirituous
or fermented liquors without a license, have never been con-
strued as applicable to *social clubs* where liquors are pro-
cured for the use of the members and are furnished to them
in the manner described in the present case. We think it
very clear that no license is required, for the reason that such
a transaction is not a *sale* within the meaning of the License
Laws."

In the case of *Chesapeake Club* v. *State,* 63 Md. 448, the
defendant was charged with unlawfully having in its posses-
sion certain spirituous and fermented liquors, naming them,

with the intent unlawfully to sell the same, in violation of the provisions of the Act of 1882, Chapter 112, known as the Local Option Law of Anne Arundel County. This local statute in express terms declared that all corporations or associations violating its provisions should be liable to indictment and punishment therefor. To this indictment a demurrer was entered upon the ground that such an indictment would not lie against a body corporate. The lower Court overruled this demurrer. Upon appeal this Court was evenly divided upon the question raised by the demurrer, all agreeing, however, that the case was improperly before it on demurrer.

The next of this class of cases before this Court was that of *State* v. *Easton Social Club, of Talbott County,* 73 Md. 98. In that case the State instituted proceedings under sections 255, 256, 257 and 258 of Article 23 of the Code, charging the defendant corporation with misuse and abuse of its corporate powers and franchises and asking for a forfeiture of its charter. The charge of misuse and abuse against the corporation in that case was that it had been selling spirituous and fermented liquors in violation of the Local Option Law of Talbot County. The defendant answered setting up as a defence to the charge made against it in the petition a state of facts similar to those pleaded in this case. The Court there said, speaking through JUDGE ALVEY: "Whether the facts admitted by the answer demurred to present a case of misuse or abuse of the corporate privileges and franchises, such as furnish a legal cause of forfeiture, depends upon the question, whether the furnishing of spirituous and fermented liquors by the steward or manager of the club to the members thereof, upon payment of the prices fixed by the regulation of the corporation, constituted sales of such liquor in violation of the law? This question, whether the furnishing of liquor by a club to its members, as above stated, constitutes a sale in violation of the law, has been the subject of various and conflicting decisions of several of the appellate State Courts of this country, but after a careful examination and

comparison of all the decisions upon the subject, we are decidedly of opinion, that the furnishing of liquors by the club to its members for a price fixed by regulation, and paid by the member upon the receipt of the liquor, constitutes a sale, and is, therefore, in violation of the statute. That the revenues received by the club from the various sources mentioned in the answers become the property of the corporation, would seem to be too plain to admit of a doubt. It is with this fund, or a part of it, that the liquors are bought by the corporation, and they are kept as the property of the corpora- tion, under its control, to be disposed of at prices fixed by it. None but members, it is true, can obtain the liquor, but they can only obtain it by paying for it, and the money thus paid goes into and constitutes a part of the fund of the corporation. The parties are competent to contract one with the other, there being no principle to forbid a member of a corporation from contracting with or becoming a purchaser of property from the corporate body as a legal entity. And that being so the course of dealing as between the corporation and its individual members, as stated in the answers, presents all the elements of an executed contract. The corporation being the owner of the liquor, through its appointed agent, delivers it to the members of the corporation on his request, and receives a fixed compensation in money therefor. The prop- erty in the liquor passes to and becomes vested in the indi- vidual member, and the money paid is received for, and becomes the property of the corporation. Nothing more is or can be required to constitute a complete sale, and the fact that the sales were made without actual profit to the corpora- tion is wholly immaterial, and affords no ground of defence to these proceedings. The statute, alleged to have been vio- lated, provides that any person who shall sell spirituous or fermented liquors in the 1st, 2nd, 3rd and 5th districts in Talbot County, on conviction thereof shall be fined not less than fifty nor more than three hundred dollars, and be imprisoned in the House of Correction, etc., Act of 1884, Chapter 346. The word "person" used in the statute is a

generic term, and as such, *prima facie,* includes artificial as well as natural persons. This is the established rule of construction." *The Germania* v. *State,* 7 Md. 1; *U. S.* v. *Amedy,* 11 Wheat. 392; *People* v. *Utica Ins. Co.,* 15 John. 358; *Rule* 12, *Interpretation of Code,* page 3.

The case of *Seim et al.* v. *State, supra,* was much relied upon by the counsel for the appellees in *State* v. *Easton Social Club, supra,* but JUDGE ALVEY, in stating the distinguishing features of that case, said: "The party was indicted for selling and disposing of beer on Sunday, and it was supposed that because the license laws had never been construed to apply to social clubs, that, therefore, the law restraining the sale and disposition of liquor on Sunday was not intended to apply to them."

While the views expressed by this Court in the case of *State* v. *Easton Social Club* upon the question here presented has been held to be the law in some jurisdictions—*State* v. *Essex Club,* 20 Atl. Rep. 769; *State* v. *Lockyear,* 95 N. C. 633; *Kentucky Club* v. *Louisville,* 17 Southwestern Rep. 743; *People* v. *Soule,* 41 Northwestern Rep. 908; yet in others, a contrary view has been taken—*Comm.* v. *Smith,* 102 Mass. 144; *Comm.* v. *Pumphret,* 137 Mass. 564; *Tennessee Club of Memphis* v. *Dwyer,* 11 Lea. 452.

JUDGE ALVEY, in the *Chesapeake Club Case, supra,* in which the Court was divided, in expressing the views held by him and JUDGES IRVING and STONE, said of the *Seim case,* that: "It was thought that the case was not within the meaning of the Act of 1866, because the license law had never been applied to social clubs. In other words because the license law had never been construed to apply to such clubs, the Sunday law was supposed not to be intended to apply to them. Whether the reasoning was sound or unsound in the case to which it was applied, it is very clear that it can have no application whatever to this case."

It is contended by the defendant that what was said by this Court in the *Easton Social Club case, supra,* holding

that there was a sale of the liquor therein mentioned, should not be applied to this case. That there it was construing a statute that prohibited the sale, while here it is construing a statute which regulates the sale of spirituous or fermented liquors. We, however, can not adopt this view, for as was said by the State in its brief, a sale made under the one statute is no less a sale under the other statute, since the attending circumstances in each case are identical and the character of the transaction construed to be a sale in the *Easton Club case* is entirely unaffected by the fact that in Washington County sales by licensees are authorized.

The defendant also contends that the provisions of the high license law for Washington County, Chapter 380 of the Acts of 1908, indicate that it was intended to apply solely to individuals and not to corporations, inasmuch as a corporation could not comply with some of the conditions required in making the application for license. These conditions were, that the applicant "is a citizen of the United States, and a statement of the extent of his residence in the county." We think, however, this objection was settled by this Court in the case of *State* v. *Maryland Club*, 105 Md. 585. There the traverser, a corporation, was held to be a licensee under Chapter 278 of the Acts of 1906, which imposes upon the applicant for license the same identical conditions that are imposed upon the applicant by the statute involved in this case, and in that case the Court said: "Social clubs are brought fully and completely within all the provisions of the Act which in their nature are properly applicable thereto."

Since the passage of the Act of 1880, Chapter 282, it has been unlawful for any club or corporation in this State, outside of Baltimore City, to give, barter or sell spirituous or fermented liquors or lager beer to any member of said club without first having taken out an oyster-house license therefor, without which license no person or body politic in this State is permitted to barter and sell spirituous or fermented liquors or lager beer in quantities less than a pint.

In obedience to the Acts of 1890, Chapter 282, the defendant took out the oyster-house license, and thus became a licensee, and as contended by the State, was, as such, in all respects subject to the conditions, provisions and penalties of the Act of 1908, Chapter 380, including the requirement that it (the defendant) should take out the license provided for therein. For in the last named statute it is expressly provided that "It is the intention of this act that licensees to sell spirituous and fermented liquors under Article 56 of the Code of Public General Laws of the State of Maryland shall in all respects be subject to the conditions, provisions and penalties of this act."

From the statutes involved in this case, and from the decisions of this Court from which we have quoted, construing the license law permitting and regulating the sale of spirituous and fermented liquors, as they now exist, we have little or no difficulty in reaching the conclusion that in this case there was a sale by the defendant of the liquor named in the indictment, and that the defendant comes within the meaning of the Acts of 1908, Chapter 380, and is required thereby to take out the license therein mentioned.

From what we have said, it follows that there was no error in the ruling of the learned Court below. We will therefore affirm the judgment.

*Judgment affirmed, with costs to the appellee.*