STATE *vs.* DELAWARE SAENGERBUND, INCORPORATED, a corporation of the State of Delaware.

1. INTOXICATING LIQUORS—SALE—REGULATION—LEGISLATIVE POWER.
    The state government may regulate the liquor traffic for the purpose of deriving revenue, and also in the exercise of its police power for the benefit and protection of society.

2. INTOXICATING     LIQUORS—SALE—REGULATION—STATUTES—CONSTRUCTION.
    14 *Del. Laws*, c. 418, provides that no person, directly or indirectly, shall sell any intoxicating liquors, except as provided in the act, which then provides for the sale of liquor in certain and limited ways relating to the quantity to be sold, and the place on which the liquor is to be drunk, limiting the right to sell liquor to the persons and in the manner described. *Held*, that such act should not be construed as limited to sales by persons selling liquor as a business, but prohibited sales of liquor without a license by an incorporated club organized and maintained for other and innocent purposes, though the sales were restricted to members.

3. INTOXICATING LIQUORS—WRONGFUL SALE—"PERSON"—CORPORATION.
    An incorporated club, organized to furnish musical and other entertainment among its members, was a "person", within 14 *Del. Laws*, c. 418, providing that no person, by himself, his agent, or servant, directly or indirectly, shall sell any intoxicating liquors, except as provided in the act.

4. INTOXICATING LIQUORS—WRONGFUL SALE—"SALE".
    An incorporated club, organized for social, literary, and musical purposes, with its own funds purchased a stock of intoxicating liquors, which through its authorized agents and employees were furnished to members in quantities less than a quart, to be drunk on the premises; the member paying an agreed price per drink. Only members of the club were permitted to obtain liquors from the club, and the proceeds of sales were used for the club's general purposes, and not set aside to replenish the stock. *Held* that, when liquor was so furnished to a member of the club, there was a "sale" of liquor,

within 14 *Del. Laws*, *c.* 418, providing that no person shall sell any intoxicating liquors, except as therein provided, and declaring that such liquors may not be lawfully sold without a license.

(*June* 11, 1914.)

Judges WOOLLEY and RICE sitting.

*Josiah O. Wolcott*, Attorney General, for the state.

*Robert G. Harman* and *Robert H. Richards* for the defendant.

Court of General Sessions, New Castle County, May Term, 1914.

INDICTMENT (No. 37, January Term, 1914); on error, — *Boyce* —, 91 *Atl.* 290.

The Delaware Saengerbund, Incorporated, a Delaware corporation, was indicted for selling liquor without a license, in violation of 14 *Del. Laws*, *c.* 418, as amended. The facts were submitted to the jury and questions of law addressed to the court on the following statement of facts:

"  *   *   *  It is agreed by and between the parties hereto, the State of Delaware acting by and through the Attorney General, and the defendant acting by and through Robert G. Harman, Esq., and Robert H. Richards, Esq., its attorneys, that this cause shall be submitted to the court for its determination upon the following agreed statement of facts:

"Delaware Saengerbund, Incorporated, is an incorporated club created in the year 1883 by special act of the Legislature of the State of Delaware, and whose corporate existence has been continued and renewed under the present General Corporation Law of the said state, a copy of the charter of the said defendant being annexed hereto and marked 'Exhibit A'.

"A copy of the by-laws of said defendant is annexed hereto marked 'Exhibit B'; and it is agreed that the said charter and the said by-laws shall be considered as a part of this case stated.

"Delaware Saengerbund is an organization formed for social, literary and musical purposes and particularly for the training and development of the human voice in the art of singing. It is a German singing society and not only gives entertainments of that character, but takes a prominent part in singing contests throughout the United States.

"That since the date of the incorporation of the said club, it has, from time to time, purchased in bulk spirituous and malt liquors, and through its authorized agents and employees, has furnished the same to its members in quantities less than one quart to be drunk on the premises and at an agreed price per drink.

"That every member of said club pays for the quantity of spirituous and malt liquors he calls for and consumes.

"That only members of the said club are permitted to thus obtain spirituous and malt liquors from the said club.

"That said club is located and domiciled at Grubb's Landing, in Brandywine Hundred, New Castle County, and State of Delaware, and also owns a one-half interest in and occupies a building in the City of Wilmington, located at 204-206 East Sixth Street; and that at said properties the said club uses in connection with one or the other of them the following stock, fixtures and personal property, to wit: A pool table, shuffle board, piano, library, newspapers and magazines, stock of cigars, soft drinks, malt and spirituous liquors.

"That the said defendant is the owner of the building which it occupies in Brandywine Hundred as a club-house, which building is of the value of upwards of fifteen thousand dollars, and is the owner of a one-half interest in the said building in the City of Wilmington, which building is of the value of upwards of ten thousand dollars.

"That the said club has between seven and eight hundred members, all of whom are elected in accordance with its charter and by-laws.

"The said club, since the date of its incorporation up to and including the date hereof, never applied for, held or had issued to it by the State of Delaware, any license to sell intoxicating liquors in any quantities whatsoever, nor any license to sell any other merchandise furnished by said club to ts members.

"That said club has paid to the United States of America, for the year beginning July 1, 1913, an internal revenue tax as a retail liquor dealer.

"That said club, as an incident to the objects of its incorporation, as stated in its charter, furnishes spirituous and malt liquors to its members, who pay to said club money therefor; that the selling price of the liquors so furnished exceeds the cost thereof to said club; that all such money arising from such furnishing of such liquors to members is placed in the treasury of said club and becomes a part of the general funds of said club and is expended for club uses by said club for any purpose the said club sees fit; that none of such money, or of any funds of the club, is distributed to or divided among the members of said club, or any of them, as profits, dividends or otherwise.

"That on the twenty-eighth day of October, A. D. 1913, one John H. Litz, a member of said club in good standing, at the said club-house of said club, in Brandywine Hundred, New Castle County, Delaware, gave to a certain agent, and employee of said club, then acting as such agent, the sum of five cents, and received in exchange therefor one drink of intoxicating liquor, to wit, a glass of that malt liquor called lager beer, the same being furnished from the stock and supplies of such liquor kept by said club and purchased out of the funds of said club for the purpose of being furnished to the members of said club upon their paying the price or charge fixed therefor by a tariff or schedule of prices fixed for the same by said club. That in acting and doing as aforesaid, said agent was authorized so to act and do by said club.

"That said club-house is located in a district wherein the qualified electors of said district have voted that the manufacture and sale of intoxicating liquors shall be licensed in accordance with the provisions of *Article* 13 of the *Constitution* of the State of Delaware.

"If the court shall be of the opinion that it is material to this case, and that the defendant in a trial would be entitled to offer it as evidence, then the further statement of fact is agreed as contained in the next succeeding paragraph, as follows, to wit:

"It is agreed that for upwards of forty years numerous clubs and organizations, in the said County of New Castle, both incorporated and unincorporated, have furnished and dispensed intoxicating liquors to their members,

without applying for or holding any license under the laws of the State of Delaware, to sell intoxicating liquors.

"It is further agreed that if the court shall be of the opinion, upon the facts aforesaid, that, under the laws of the State of Delaware, an offense punishable by such laws is stated or shown to have been committed by the defendant, then judgment shall be entered against said defendant upon the verdict of the jury charged accordingly by the court upon the said admitted facts; and if the court shall be of the opinion, upon the facts aforesaid, that such an offense is not stated or shown to have been committed, then judgment shall be entered accordingly upon a verdict of not guilty. The said defendant, in case of a judgment against it, as aforesaid, reserves the right to except to the charge of the court upon the law.  *  *  * "

WOOLLEY, J., charged the jury as follows:

Gentlemen of the jury:—The acts for which the defendant has been indicted, and the facts upon which this case is submitted to you for your determination, have been admitted and agreed to by the state and by the defendant, in the case as stated and read in your hearing, thereby dispensing with the necessity of formal proofs. Under this agreed state of facts the defendant is guilty or innocent of the misdemeanor charged to it by the indictment, according as the court states and instructs you upon law applicable thereto.

The admitted facts of this case, that have the most direct bearing on the question raised by them, are: That that defendant is a corporation; that it is a *bona fide* club, consisting of several hundred members, organized and conducted for an innocent and a lawful purpose; that as an incident and not as an object of its organization and conduct, it purchased intoxicating liquors with funds from its treasury, and when requested, dispensed the same in general to its members, and in this particular instance, to one John H. Litz, one of its members, in return for money paid by him; that the money received from its members in return for the liquor dispensed was placed in the general funds of the club, to be used for club purposes, and was not set apart and kept as a separate fund with which to replenish its stock of liquor; and that it never applied for nor did it ever receive from the State of Delaware, a license to sell liquors.

The question of law, presented by this statement of facts, is whether the defendant, in so dispensing intoxicating liquors to its members without a license from the State of Delaware to sell

intoxicating liquor, violated the provisions of *Chapter* 418, *Volume* 14, *Laws of Delaware*, as amended; or stated with especial reference to the precise issue by which alone that question may be solved, was the described transaction a sale, or rather a sale of liquor within the meaning of the statute?

[1]   The sale of intoxicating liquors has for many years been a subject over which the State of Delaware has assumed regulation and control.   The exercise of such a power over such a subject as liquor may be resorted to by a state government primarily for two objects; the state may treat the sale of liquor as a proper subject of revenue, and with that object alone in view, exert its power in producing for the state an income from the sale of liquor by and to its citizens.   Such a statute is called a revenue statute.   A state, however, may go further than this, and while retaining the revenue feature, it may consider that because of the nature of the commodity, and its effect upon the health, morals and the habits of its citizens, it will by statute control the sale of liquor for the benefit and protection of society, under its police power.

[2]   In contemplation of the first object, the General Assembly of the State of Delaware, in 1867, enacted a statute which provided:

"That no person  *  *  *  without having first obtained a proper license therefor, shall  *  *  *  be engaged in  *  *  *  any business  *  *  *  in this section hereafter next mentioned, that is to say:  *  *  * Selling vinous, spirituous and malt liquors." *Chapter* 117, *Volume* 13, *Laws of Delaware.*

Observing a long line of cases decided under like statutes in other states, regulating and affecting the *business* of selling vinous, spirituous, and malt liquors, in which were raised the question whether under such statutes the dispensing of liquor by a club comes within the provisions thereof, we can readily see how the transaction, though possibly a sale, is not an act committed by the defendant in the "business of selling vinous, spirituous and malt liquors," for certainly a *bona fide* club, such as this defendant, is not engaged in the business of selling liquor, and therefore we can understand how the courts in the jurisdictions

adverted to, might very readily hold that the transaction complained of is not a violation of the provisions of such statutes.

But the law of our state with respect to the sale of intoxicating liquors was changed by the act of 1873, and with that change the question whether such a transaction as that of the defendant club in dispensing liquors to its members is a violation of the law against the sale of liquor, assumed a different aspect, and created the necessity of determining it with respect to language and within the meaning of an altogether different statute. The former statute, in so far as it related to the business of selling liquor was repealed and its provisions with respect to the business of selling liquor were superseded by the provisions of a new act (*Chapter* 418, *Volume* 14, *Laws of Delaware*), which abandoned the regulation of the *business* of selling liquor and addressed itself to the regulation of the *sale* of liquor. It begins with a sweeping declaration that

"No person, by himself, his agent, or servant, directly or indirectly, shall sell any intoxicating liquors except as herein provided."

If this had been all of the statute, the words and their unequivocal meaning would have constituted a statute of total prohibition. Following these words of general prohibition, however, the statute provides for the sale of liquor in certain and in limited ways, which have a relation to the quantity to be sold and the place upon which the liquor is to be drunk, thereby indicating in the first paragraph that no person excepting those thereafter designated may sell liquor in this state, and by the latter paragraphs limiting the right to sell liquor to the persons and in the manner described. As the defendant admits that it was not a person licensed under this law to sell liquor, but two questions are presented for consideration, first, whether the defendant is a "person" within the meaning of the act; and, second, whether the transaction was a sale within the meaning of the act.

[3] It is not denied that the defendant corporation is a "person" within the meaning of the statute. The word person is a generic term, and as such may extend to and include artifi-

cial as well as natural persons. The intention of the Legislature in the use of the word is manifest, and in construing the statute, we hold that when the Legislature by statute attempted to regulate the sale of liquor in all ways it intended its control to extend to all persons, and this embraced corporations as well as individuals. *Rev. Code, c. 5, § 1, subd. 10; Germania v. State, 7 Md. 1; United States v. Amedy, 11 Wheat. 392, 6 L. Ed. 502; People v. Ins. Co., 15 Johns. (N. Y.) 358, 8 Am. Dec. 243.*

In support of the opposing contentions that the transaction of the defendant, in dispensing liquors to its members, is or is not a sale, counsel for the respective parties have cited a vast number of cases, which upon examination we find difficult to classify and impossible to reconcile. As every case involving the question of the right of a club to sell or dispense liquor to its members has arisen under a charge of violating the prohibition of some statute, so every case turns upon the peculiar language and particular meaning of the statute under which the charge is made and the case is tried. As the force of a decision is not known until the language of the statute under which it is rendered is known, we have been compelled to give to the study of each case a corresponding consideration of the statute under which each case was decided, in an effort, by elimination and comparison, to distinguish the cases decided under statutes with prohibitive features similar to our own from those decided under statutes with dissimilar features, and thereby collect and weigh the decisions that may have an authoritative bearing upon the case before us.

To review the consideration we have given to all the cases cited together with the statutes under which they were decided, would result in an opinion, the inordinate length of which would tend to confuse rather than facilitate a ready comprehension of the subject. We will therefore attempt a classification of the cases and give to the cases so classified a consideration of the general principles by which they are controlled.

Amid the conflict of decisions upon the question under consideration, the courts everywhere have been uniform in their effort to stamp out any trick or device, which, in the guise of legal form, is resorted to in order to evade the laws regulating or pro-

hibiting the sale of liquor. Clubs that are organized to evade the law present no problems under any kind of a statute, with respect to their right to sell or dispense liquor. They have none. And when such devices are resorted to, they are readily unmasked and are promptly swept aside. We therefore eliminate from our consideration, as of no authoritative weight upon the case before us, all those cases cited which might be termed "device cases". The case under consideration is admitted to be a case of a *bona fide* club, dispensing liquor in a manner which, if unlawful, was without attempt to evade the law.

[4] A transaction such as is charged to the defendant in this case is in many jurisdictions held to be a sale in the ordinary legal meaning of that term, and held to be a violation of statutes that prohibit the *sale* of liquor. On the other hand, such a transaction is held in other jurisdictions under like statutes not to be a sale, and not a violation of the law, upon the theory that the liquor is owned in common by all the members of the club, for the use and refreshment of those who desire it, that when a member is served with a drink, he but takes from the common stock a portion of what already is his own, and the money he pays for it is but a contribution to replenish the stock by the amount he took out, that the transaction, instead of being a sale, is but an equitable mode of distributing among the owners, in proportion to their use of it, the property which they hold in common.

In searching for the cases that hold to these opposing contentions under statutes similar to our own, in order to apply to this new question under our statute the light of the reasoning that elsewhere has been given it, we find that many of the cases cited, in support of one contention or the other, though adopting in some instances the theory of either one contention or the other, have really been decided under statutes with such a lack of resemblance to ours that the cases are without weight in aiding or controlling our conclusions in the case in hand.

There are statutes of many other jurisdictions which do not flatly inhibit the *sale* of liquor as does our statute, but which prohibit certain businesses in connection with the sale of liquor, except by license, etc. Such statutes are construed to extend

only to the particular things for which they were enacted, and when they do not include clubs, the courts very naturally hold that a sale by a club is not an offense against such a statute. Thus when the prohibition of a statute extends only to the sale of liquor without licenses by those engaged in "the business of selling liquor," "retail dealers", "dramshop keepers," "tippling houses," "selling by retail," in which occupations or trades a *bona fide* club is not by expression and cannot by implication be included, the courts construe the statutes to mean what they say and exclude sales by clubs from their operation. Thus in Missouri the act (*Laws,* 1891, *p.* 128; *sections* 7186-7229, *Rev. Stat.* 1909) is known as the Dramshop Act, a dramshop keeper is defined, and the law prohibits the sale of liquor by a dramshop keeper without a license. The defendant was a *bona fide* incorporated social club, at which liquors were dispensed, or it may be sold; but such a club was not a dramshop within the given definition of the act, and against a sale of liquor by such an organization there was no law, therefore the sale or dispensing of liquor by a club was held not to be a sale within the meaning of the Dramshop Act.

While there is logic and consistency in such rulings, they are made under statutes the prohibitory features of which do not extend to the sale of liquor in the sense in which our statute employs that term, and therefore should be eliminated from our consideration. Cases under such statutes have been cited, however, by both sides to this controversy, for the reasoning employed by the courts upon what constitutes a sale.

Cases under such statutes holding the transaction no sale: *Piedmont Club v. State*, 87 *Va.* 541, 12 *S. E.* 963 (1891); *Tenn. Club v. Dwyer*, 11 *Lea* (*Tenn.*) 452, 47 *Am. Rep.* 298 (1883); *State ex rel. Columbia Club v. McMaster*, 35 *S. C.* 1, 14 *S. E.* 290, 28 *Am. St. Rep.* 826 (1892); *State ex rel. Bell v. St. Louis Club*, 125 *Mo.* 308, 28 *S. W.* 604, 26 *L. R. A.* 573 (1894); *State v. Austin Club*, 89 *Tex.* 20, 33 *S. W.* 113, 30 *L. R. A.* 500; *Moriarity v. State*, 122 *Tenn.* 440, 124 *S. W.* 1016, 25 *L. R. A.* (*N. S.*) 1252; *Koenig v. State*, 33 *Tex. Cr. R.* 367, 26 *S. W.* 835, 47 *Am. St. Rep.* 35 (1894); *Cuzner v. California Club*, 155 *Cal.* 303, 100 *Pac.* 868, 20 *L. R. A.*

(*N. S.*) 1095 (1909); *Merced County v. Helm*, 102 *Cal.* 159, 36 *Pac.* 399 (1894); *State v. University Club*, 35 *Nev.* 475, 130 *Pac.* 468, 44 *L. R. A.* (*N. S.*) 1026.

Cases under the same kind of statutes holding transaction a sale: *State v. Shumate*, 44 *W. Va.* 490, 29 *S. E.* 1001 (1898; retailing); *State v. Gelpi*, 48 *La. Ann.* 520, 19 *South.* 468 (1896; place of public business); *State v. Law and Order Club*, 203 *Ill.* 127, 67 *N. E.* 855, 62 *L. R. A.* 884 (1913; dramshop); *South Shore Country Club v. People*, 228 *Ill.* 75, 81 *N. E.* 805, 12 *L. R. A.* (*N. S.*) 519, 119 *Am. St. Rep.* 417, 10 *Ann. Cas.* 383 (1907; dramshop); *State v. Mudie*, 22 *S. D.* 41, 115 *N. W.* 107 (engaging in business of selling liquor); *State v. Soule*, 74 *Mich*, 250, 41 *N. W.* 908, 2 *L. R. A.* 494 (business of selling liquor); *Martin v. State*, 59 *Ala.* 34 (retailing without license); *State v. Neis*, 108 *N. C.* 787, 13 *S. E.* 225, 12 *L. R. A.* 412 (retailing); *Mohrman v. State*, 105 *Ga.* 709, 32 *S. E.* 143, 43 *L. R. A.* 398, 70 *Am. St. Rep.* 74 (1898; tippling house); *Spokane v. Baughman*, 54 *Wash.* 315, 103 *Pac.* 14 (1909; barroom).

It is urged by the defendant that the cases cited by the state, decided in jurisdictions under prohibition or "local option" statutes, are without weight in support of its contention that the transaction charged to the defendant is a sale.

The text writers and some judges find a distinction between statutes regulating the sale of liquor in license territory and statutes prohibiting the sale of liquor in prohibition territory, as affecting what constitutes a sale of liquor by a club. It is difficult for us to find the distinction to exist merely upon the ground that in one jurisdiction the sale of liquor is partially prohibited and in another the sale is totally prohibited. When a distinction exists between statutes the distinction usually is one of terms and intent, and if the terms and intent of a statute prohibiting the sale of liquor, excepting in a designated manner, are as positive as the terms of another statute prohibiting the sale of liquor in any manner, a case within the prohibition of either has a bearing upon a case within the prohibition of the other. Of the same opinion was the court in *Conococheague Club v. State*, 116 *Md.* 317, 81 *Atl.* 602.

We know of no statute that absolutely prohibits the sale of liquor. All prohibition statutes, that have come to our knowledge, allow the sale of liquor for some purpose, usually for medicinal purposes, and sometimes for sacramental, mechanical and scientific purposes. While it is commonly understood that total prohibition prevails by law in Kent and Sussex Counties, such is not the case. Liquor may be lawfully sold in those counties in the manner prescribed by law, just as it may be lawfully sold in New Castle County in the manner prescribed by law. The sale of liquor in New Castle County is as positively prohibited in all ways except those designated as the sale of liquor in Kent County is prohibited in all ways excepting those designated, namely, for medicinal and sacramental purposes. There are exceptions as to sales under statutes relating to each county and the prohibition of the statute relating to New Castle County so far as it extends is as absolute and complete as the prohibition in the statute that relates to Kent County so far as it extends. After all is said and done, the right of sale by a club, either in license or prohibition territory, depends upon the terms and intent of the statutes, and the intent of each statute, in the cases illustrated, is to prohibit the sale of liquor in all ways other than those excepted. We are of the opinion that the "local option" statutes, under which the following cases were decided, are of sufficient similarity to the prohibition of our own statute, and the similarity of the acts there done with the act here charged, as to make the following cases authorities in support of the contention that the transaction is a sale: *State v. Easton Club*, 73 *Md.* 97, 20 *Atl.* 783, 10 *L. R. A.* 64 (1890); *State v. Chesapeake Club*, 63 *Md.* 446 (1885); *State v. Kline*, 50 *Or.* 426, 93 *Pac.* 237 (1907); *State v. Neis*, 108 *N. C.* 787, 13 *S. E.* 225, 12 *L. R. A.* 412 (1891); *State v. Lockyear*, 95 *N. C.* 633, 59 *Am. Rep.* 287.

This case is to be distinguished from a line of cases decided under statutes or ordinances which by their terms embrace "clubs", and which expressly prohibit the sale or furnishing of liquor by clubs without licenses. Under such statutes, the transaction of dispensing or selling liquor is not open to construction, and decisions under such statutes bear remotely, if at

all, upon the question in this case. *Woollen & Thornton on Intoxicating Liquors*, § 794.

The cases decided in England and in the English provinces are decided under statutes the prohibitory terms of which are not distinguishable in any material respect from the terms of our own statute. They are in effect that "no person shall sell or expose for sale, etc., except," etc. Under these statutes the courts of England and of the English provinces wherever the occasion has arisen have uniformly held that the dispensing of liquor by a club to its members for a consideration paid or promised does not constitute a sale of liquor within the meaning of the statute, but amounts merely to an equitable mode of distributing among the members of the club the property which they own in common. *Graff v. Evans*, L. R. 8 Q. B. Div. 373 (1882; unincorporated club); *Newell v. Hemingway*, 16 *Cox, Crim. Cases* 604 (1888; incorporated club); *Victoria v. Union Club*, 3 *British Columbia*, 363 (1894); *Davies v. Burnett*, 1 *K. B. D.* 666 (1902); *Rex v. Doyle, East L. Rep. (Pr. Edw. Is.)* 97 (1910).

The theory of the English courts that the transaction of dispensing liquor to its members by a *bona fide* club is not a sale, but is a method of dispensing to the members of the club property which is their own, has been followed by the courts in certain American jurisdictions with statutes sufficiently similar to our own to make them authoritative. The American cases that hold to this theory are the following: *People v. Adelphi Club*, 149 *N. Y.* 5, 43 *N. E.* 410, 31 *L. R. A.* 510, 52 *Am. St. Rep.* 700 (1896); *Klein v. Livingston Club*, 177 *Pa.* 224, 35 *Atl.* 606, 34 *L. R. A.* 94, 55 *Am. St. Rep.* 717 (1896); *Seim v. State*, 55 *Md.* 566, 39 *Am. Rep.* 419 (1880); *Barden v. Montana Club*, 10 *Mont.* 330, 25 *Pac.* 1042, 11 *L. R. A.* 593, 24 *Am. St. Rep.* 27 (1891); *State ex rel. Columbia Club v. McMaster*, 35 *S. C.* 1, 14 *S. E.* 290, 28 *Am. St. Rep.* 826 (1892); *Russel v. State*, 19 *Wyo.* 272, 116 *Pac.* 451 (1911); *State v. Duke*, 104 *Tex.* 355, 137 *S. W.* 654 (1911); *Adams v. State (Tex. Cr. App.)* 145 *S. W.* 940 (1912); *Trezevant v. State (Tex. Cr. App.)* 145 *S. W.* 1191 (1912).

When the federal courts have been called upon to construe the transaction of dispensing liquor by a club to its members they

Charge.

have uniformly held the transaction to be a sale. It is contended, however, by counsel for the defendant, that the rule in the federal decisions is to be distinguished from the rule to be applied in this case, upon the ground that the federal cases were decided under the revenue act of the federal government, and that being excise cases, all questions were resolved in favor of the tax. An examination of the cases, however, does not support this contention. The federal statute requires that "retail dealers in liquor" shall pay a special tax of twenty-five dollars. If this were all of the statute, cases arising under it would come under the class of cases decided under statutes pertaining to the business of selling liquor, retail dealers, dramshops, etc.; but the federal statute goes further and proceeds to define who are "retail dealers in liquor," viz.:

"Every person who sells or offers for sale" distilled spirits or wine, or malt liquors, "shall be regarded a retail dealer in liquors."

This definition takes the federal cases out of the class in which at first view they would seem to belong and leaves open the question whether the transaction described is such a sale as the statute prohibits, the court saying in one case:

"The test under the statute is, was the act a sale?"

We are therefore of opinion that, although the federal cases are cases arising under a revenue statute, their adjudication has depended upon the construction placed upon the transaction as a sale. We consider the following leading federal cases are authoritative citations in support of the contention of the state: *United States v. Wittig*, 2 *Lowell*, 486, *Fed. Cas.* No. 16,748; *United States v. Giller (C. C.)* 54 *Fed.* 656; *United States v. Alexis Club (D. C.)* 98 *Fed.* 725.

The American state cases that hold the transaction to be a sale, and repudiate the theory that the transaction is an equitable mode of distributing property among its owners, decided under statutes with prohibitory features similar to our own, some of which might properly be classified as device cases, but were cited for the reasoning of the courts upon the question of a sale, are

the following: *Marmont v. State,* 48 *Ind.* 21; *State v. Lockyear,*
95 *N. C.* 633, 59 *Am. Rep.* 287; *People v. Soule,* 74 *Mich.* 250, 41
*N. W.* 908, 2 *L. R. A.* 494 (1889); *Newark v. Essex Club,* 53 *N. J.
Law,* 99, 20 *Atl.* 769 (1890); *Nogales Club v. State,* 69 *Miss.* 218,
10 *South.* 574; *Krnavek v. State,* 37 *Tex. Cr. App.* 44, 41 *S. W.*
612; *Mohrman v. State,* 105 *Ga.* 709, 32 *S. E.* 143, 43 *L. R. A.* 398,
70 *Am. St. Rep.* 74; *State v. Kline,* 50 *Or.* 426, 93 *Pac.* 237; *State
v. Minn. Club,* 106 *Minn.* 515, 119 *N. W.* 494, 20 *L. R. A.* (*N. S.*)
1101 (1909); *Lloyd v. Canon City,* 46 *Colo.* 195, 103 *Pac.* 288
(1909); *Spokane v. Baughman,* 54 *Wash.* 315, 103 *Pac.* 14; *Ada
County v. Boise Commercial Club,* 20 *Idaho,* 421, 118 *Pac.* 1086,
38 *L. R. A.* (*N. S.*) 101 (1911); *Rothschild v. State,* 12 *Ga. App.*
728, 78 *S. E.* 201 (1913); *Manning v. Canon City,* 45 *Colo.* 571,
101 *Pac.* 978, 23 *L. R. A.* (*N. S.*) 192; *Conococheague Club v.
State,* 116 *Md.* 317, 81 *Atl.* 602.

With the aid of the cases cited, we will now address our
consideration to the transaction involved in this case, viewed in
connection with the statute under which the transaction is claimed
by the defendant to be lawful and by the state to be unlawful.
The statute is as follows:

"That no person, by himself, his agent or servant, directly or indirectly,
shall sell any intoxicating liquors except as herein provided."

Following this expression of general prohibition, the statute
designates the type of licenses that may be issued to persons who
thereunder may lawfully sell liquor, and to that end provides for
licensing druggists, innkeepers, etc. It has been earnestly con-
tended by counsel for the defendant, that notwithstanding the
general prohibitory language of its opening sentence, the statute
after all is but a statute regulating the business of selling liquors,
and that a sale by a club is not embraced within the businesses
described and intended to be regulated, and that, even if the
transaction could otherwise be considered a sale, it is not a sale
within the meaning of the statute.

In support of this contention, counsel for the defendant have
placed especial reliance upon the opinion of the Court of Errors
and Appeals of this state, delivered in the case of *Hall v. State,*

4 *Harr.* 132, decided in 1844, in which Chief Justice Booth, in construing the statute then under consideration, referred to the · sale of liquor by an innkeeper as a part of the "business" of an innkeeper, and that the license to the innkeeper authorized him "to sell liquor, generally, as a business." But the statute under construction was not a statute regulating the sale of liquor or regulating the business of selling liquor. It was a statute entitled "An act more effectually to prevent the profanation of the Lord's Day, commonly called Sunday," enacted originally in 1740 and re-enacted in 1795 (*Laws* 1795, *c.* 78), the first section of which prohibited any servile work, labor or business on Sunday, excepting works of necessity, charity and mercy. The question was whether the keeper of an inn, tavern or public house of entertainment, by the act of furnishing liquor from his bar on Sunday, was guilty of a profanation of the Lord's Day. There was no question of a violation of a law against the sale of liquor on Sunday. It was admitted he had a right to sell liquor on Sunday, under law as it then existed, if his business of a tavern keeper for public entertainment was such a business as by the terms of the statute was not prohibited on Sunday. The point decided was that the business of a tavern keeper was not such as was prohibited on Sunday within the meaning of the statute, and therefore the sale of liquor on Sunday by one licensed to engage in the business of keeping an inn was not a violation of the act against the profanation of the Lord's Day.

We do not think the case of *Hall v. State, supra,* is authority for the contention that our present statute prohibiting the sale of liquor is in effect a statute regulating the business of selling liquor.

If the statute under which the controversy in this case has arisen, were a "liquor business" statute, a "dramshop statute", or the like, the contention that clubs and sales by clubs are not embraced within its true intent and meaning would appeal to us with force; but as we read the statute, we gather from its opening sentence a declaration of a state policy respecting not the business of selling liquor, but the act of selling liquor. Although producing revenue for the state, we do not consider the·

statute distinctively a revenue act, but rather a law enacted under the police powers of the state, having in view primarily the prohibition of the sale of liquors except in specified ways, and secondly, the regulation of the sale of liquors in those designated ways. Giving to the statute this interpretation, the remaining question is whether the transaction with which the defendant is charged is a sale.

A sale may be defined to be a transfer of ownership in property from one person to another, upon a valuable consideration. *Martin v. State*, 59 *Ala.* 34, 36. The transaction charged to and admitted by the defendant was a purchase of liquor by an incorporated club with moneys from its treasury, and the transfer of a portion thereof to one of its members in exchange for money paid by him.

When liquor is purchased by such a club with the funds of the club, the liquor becomes the property of the club and so remains until it disposes of it. In such property the club holds the legal title, and as property it is a part of the club's assets. If destroyed, the loss is the loss of the club, and if insured, the indemnity is payable to the club. In case of the club's insolvency, its stock of liquor may be claimed by its receiver or may be levied upon and sold under execution process, in either event for the benefit of the club's creditors. So long as the club retains the liquor, it is difficult to see how a member has a legal interest in it or a legal right to it, except it be a right to buy it. While so retained, a member who resigns or is expelled from the club has no right to claim a portion of the liquor, nor upon his death or insolvency may his personal representative or trustee in bankruptcy reach into and take as the member's property any part of the liquor so purchased and held.

In the theory of a property right of a member in the liquor of a club, as held by the English and some American cases, that right seems first to arise, or at least is first recognized, when the member calls for, receives and pays for or promises to pay for the liquor. When this is done there is a transaction between the club and the member, resulting certainly in the physical transfer of the liquor from the former to the latter. This transaction suggests

the transmutation of title as well as the actual transfer of the property from the club to the member. The club surrenders a quantity of liquor and receives from the member a sum of money. In the exchange of the club's liquor for the member's money, the member gets something, which before was not altogether his, otherwise he would not give money for it, and the club gets something that before did not belong to it at all. Instead of liquor as an asset the club then has money as an asset, and no one has yet claimed that in the club's money asset a member owns or has any right to a separable part.

When liquor is thus transferred for money and money is at the same time paid for the liquor, the club becomes divested of the title and the member becomes vested with the title in the liquor by virtue of a transaction which in its completeness and simplicity possesses every element of a sale.

While many clubs and organizations in this state have for many years dispensed liquor to their members in the manner disclosed by this case, in the belief that they were acting within the law, and while such uniform conduct covering a considerable period of time may reflect the popular understanding of the law in this regard, nevertheless, we do not feel, for that reason or in deference to that understanding, that the court has a right to give to the law a meaning different from that which its language conveys.

The court are therefore, of opinion, upon the agreed statement of facts, that under the laws of the State of Delaware an offense punishable by such laws is stated or shown to have been committed by the defendant. Being of such opinion the jury is charged and directed to return a verdict of guilty against the defendant.

Verdict, guilty.

In conformity with the terms and stipulations of the case stated, the court orders that judgment be entered against the defendant upon the verdict of the jury.