## THE STATE ex inf. THOMAS B. HARVEY, Circuit Attorney, v. MISSOURI ATHLETIC CLUB and ST. LOUIS CLUB.

### In Banc, November 17, 1914.

1. **INTOXICATING LIQUORS:** Sale: Interpretation of Statutes. Laws relating to the sale of intoxicating liquors ought to. be so construed as to carry out the true purpose of their enactment, and in accomplishing this purpose they should be liberally construed. While the statute should not be enlarged, it should be interpreted, where its language is clear and explicit, according to its true intent and meaning, having in view the evil to be remedied and the object to be attained.

2. **SALE: Necessary Elements.** The sale of personal property is a transfer of the absolute or general property in the thing for a price in money. To constitute a valid sale there must be a concurrence of certain essential elements: First, parties capable of contracting, a seller and a buyer, either of whom may be an artificial person having a legal existence or a natural person, and, although such natural person may buy from said artificial person and be enabled to so buy only because he is a member thereof, yet he is still a natural person, because he has no such individualized ownership in the concrete property of the corporation as will enable him to legally appropriate it except by purchase; second, mutual consent, that is, a power and a purpose to sell by the seller, and a willingness to buy on the part of the purchaser; third, a thing being sold, the absolute or general property in which is capable of being transferred and is transferred from the seller to the buyer; and, fourth, a price paid or promised for such thing.

3. ———: Intoxicating Liquors: By Club to Members. The supply of intoxicating liquors by an incorporated club to its members, within the club building, for a definite price to be paid, is a sale of such liquors, although the club does not sell to any one except members, and does not permit them

to pay for same at the time they are ordered or used, but requires the members to sign cards at the time the liquors are received, acknowledging the receipt and stating the price, and to pay for same at the end of the month when all supplies are paid for, and the money is commingled with other funds of the club and used in replenishing its stock of liquors and purchasing other supplies for the use of members. Nor is such transaction rendered any the less a sale by the fact that the liquor is supplied only to members of the corporation, since the corporation or club is one person, and no member or stockholder has any such individualized interest therein as authorizes him to appropriate any part of its assets without paying for them.

4. ———: ———: ———: **Corporation.** An incorporated social club is a person within the meaning of the corporation laws, and the dispensing of liquors by it to its members for agreed sums of money, although not for profit, is a sale. [To that extent overruling Bell v. St. Louis Club, 125 Mo. 308.]

5. ———: ———: ———: **No License: Statute.** In view of the statute (Sec. 7188, R. S. 1909) declaring that "no person shall, directly or indirectly, sell intoxicating liquors in any quantity less than three gallons, either at retail or in the original package, without taking out a license as a dramshop-keeper," it is unlawful for an incorporated social or athletic club, without first obtaining a license as a dramshop-keeper, to dispense liquors to its members at a price paid or to be paid, whether for profit or otherwise.

6. ———: ———: **Corporation: Implied Powers.** Legislative grants of powers to corporations only include such rights and powers as are clearly comprehended within the words of the act creating them or as may be derived therefrom by necessary implication, regard being had to the objects of the grant, and if ambiguities or doubts arise out of the terms used in the statute they must be resolved in favor of the public; and even though it be admitted (which would seem to be judicial legisla·tion) that social clubs may be incorporated under the statutes providing for the incorporation of benevolent, religious, scientific, educational and miscellaneous associations, those statutes cannot be held to imply that an incorporated social club can sell liquors to its members, because the sale of intoxicating liquor is a limited privilege, and an express statute says that "no person shall, directly or indirectly, sell intoxicating liquors in any quantity less than three gallons, either at retail or in the original package, without taking out a license as a dram-shop-keeper," and that such a license can be granted only to "a law-abiding, assessed tax-paying male citizen over twenty-

261Mo37

one years of age," and, hence, such a license cannot be granted to a corporation, since it lacks three of the essential elements, namely, age, character and sex, and hence the doctrine of implied powers is wholly inapplicable to this class of corporations when the question arises as to their right to sell such liquors.

7. ———: ———: ———: ———: Former Construction of Statute. A judicial construction of the statutes by the highest court of the State to the effect that a corporation possessed certain implied powers becomes a part of such statutes only in case such construction affects contract or property rights. The right to sell intoxicating liquor is a mere privilege or governmental grant, and does not involve either contract or property rights, hence, the former holding of the Supreme Court, in Bell v. St. Louis Club, 125 Mo. 308, that the dispensing of liquor at retail by a social club to its members was not a violation of the dramshop law, cannot be held to have conferred on said club a vested right to continue such sale.

8. ———: ———: ———: ———: Legislative Inaction. Long legislative inaction after a court has placed an interpretation on a criminal statute favorable to defendant does not estop the State from enforcing it, nor can it be allowed to defeat its manifest purpose.

## *Quo Warranto.*

OUSTER ENTERED AND SUSPENDED.

*Thomas B. Harvey* and *Richard P. Spencer* for informant.

(1) The sale of intoxicating liquors is immoral and illegal. (a) The tendency of the sale of intoxicating liquors is to deprave public morals, and its sale is therefore illegal. Its sale is *"malum prohibitum"* if indeed it is not *"malum in se."* Austin v. State, 10 Mo. 591; State ex rel. v. Hudson, 78 Mo. 302; State ex rel. v. Moore, 84 Mo. App. 18; State v. Davis, 108 Mo. 670. (b) There is no such thing as a natural right to sell or dispense intoxicating liquors. It is a restricted privilege granted by the State to a certain class of natural persons. State v. Bixam, 162 Mo. 21. (c) In this State traffic in intoxicating liquors is dif-

ferentiated from all other occupations and separated from natural rights, privileges and immunities, and is not considered a lawful business except as authorized by express legislation. State v. Distilling Co., 236 Mo. 255; Crowley v. Christensen, 137 U. S. 91. (2) An incorporated club is not a "person" within the meaning of Sec. 7191, R. S. 1909, and cannot with or without a license sell intoxicating liquors. A dramshop keeper must be a law-abiding, assessed, tax-paying male citizen above the age of twenty-one years. R. S. 1909, sec. 7191; State ex rel. v. County Court, 66 Mo. App. 96; State ex rel. v. Payne, 107 Mo. App. 213; State ex rel. v. Scott, 96 Mo. App. 620. (3) Respondent has no express authority to traffic in intoxicating liquors. (a) Corporations are mere creatures of the law. They cannot exercise any power or authority, other than those expressly given by their charters or necessarily incident to the power and authority thus granted. They must act strictly within the scope of the powers thus conferred upon them. Millinery Co. v. Trust Co., 251 Mo. 575; Blair v. Perpetual Ins. Co., 10 Mo. 564; Mathews v. Skinker, 62 Mo. 329; Carroll v. Campbell, 108 Mo. 559; State ex rel. v. Murphy, 130 Mo. 24; State ex rel. v. Orear, 144 Mo. 157; State ex rel. v. Trust Co., 144 Mo. 586; Dartmouth College v. Woodward, 4 Wheat. (U. S.) 518; Police Relief Assn. v. Tierney, 116 Mo. App. 460; Gould v. Fuller, 79 Minn. 414. (b) The implied powers of a corporation must result from the charter by necessary implication, regard being had to the object and purpose of the corporation; and if there is uncertainty or doubt as to the terms of the charter, it must be resolved in favor of the public. State v. Trust Co., 144 Mo. 586; Millinery Co. v. Trust Co., 251 Mo. 575. (4) Respondent cannot have implied authority to traffic in intoxicating liquors. (a) The words of the statute under which respondent was chartered expressly forbid the exercise of any power which does not tend to the public advan-

tage. ·Sec. 3435, R. S. 1909·; State ex inf. v. Rod and Gun Club, 121 Mo. App. 372. (b) The sale of intoxicating liquors being an unlawful and immoral occupation, the power to engage therein cannot be implied as necessarily incident to the powers granted an educational corporation. On the contrary, the charter of every corporation in this State is a contract with the State that it will not engage in the doing or carrying on of any business which is unlawful or immoral. State ex rel. v. Jockey Club, 200 Mo. 51; State ex inf. v.Standard Oil Co., 218 Mo. 350. (5) Respondent's method of dispensing intoxicating liquors constitutes a sale. (a) In State ex rel. v. St. Louis Club, 125 Mo. 308, the bona-fide social clubs were exempted from the operations of the dramshop law ·on the theory that their method of dispensing intoxicating liquors was not a sale and that the members thereof bought and drank their own liquors. State ex rel. v. St. Louis Club, 125 Mo. 330. (b) It was conceded by the court that the method whereby the liquors were dispensed to its members as set out in the agreed statement of facts in that case did amount, technically, to a sale for some purposes (l. c. 320) but it was declared by the court that it was not such a sale as would bring it within the meaning of the dramshop act. The language of the Dramshop Act is such as to include within its meaning all sales made "directly or indirectly." R. S. 1909, sec. 7186. (c) Section 5781 makes an exception of sales made by druggists under certain conditions. Sections 7220 and 7221 make other exceptions in express terms. The doctrine of *expressio unius est exclusio alterius* applies with full force to such an act. State v. Rawlings, 232 Mo. 558; Taylor v. Pullen, 152 Mo. 438; Bank v. Graham, 147 Mo. 257·; Kansas City v. Building & Loan Assn., 145 Mo. 53; Mathews v. Skinker, 62 Mo. 334. (d) Though always cited, the opinion in the St. Louis Club case as to the nature of the transaction whereby an incorporated club serves liquors to its

members and their guests at a stipulated price per drink, has been condemned in every well considered opinion handed down by our State and Federal courts, wherein the precise question was presented for adjudication, and such transactions are almost uniformly held to be in violation of the dramshop acts of the several States and of the United States.  County of Ada v. Commercial Club, 20 Idaho, 421; Manning v. Canon City, 45 Colo. 571; Spokane v. Baughman, 54 Wash. 315; State ex rel. v. Minnesota Club, 106 Minn. 515; South Shore Country Club v. People, 228 Ill. 75; People v. Law & Order Club, 203 Ill. 127; State v. Social Club, 73 Md. 97; Conococheaque Club v. Maryland, 116 Md. 317; Beauvoir Club v. State, 148 Ala. 643; Marmount v. State, 48 Ind. 21; Mohrman v. State, 105 Ga. 709; Army & Navy Club v. District of Columbia, 8 D. C. App. 544; Ky. Club v. Louisville, 92 Ky. 309; State v. Boston Club, 45 L. R. A. 485; State ex rel. v. Topeka Club, 82 Kan. 756; State v. Neis, 108 N. C. 787; United States v. Gillen, 54 Fed. 656; United States v. Alexis Club, 98 Fed. 725; Central Law Journal, vol. 64, p. 482; State v. Mudie, 44 S. D. 41; King v. Simmonds, 44 Nova Scotia, 110; Bachelors' Club v. Woodburn, 60 Ore. 331.   (e) In those cases where the St. Louis Club case is followed and approved, the courts, in order to justify their rulings, have resorted to artificial and fictitious reasoning.   Klein v. Livingstone Club, 177 Pa. 224; Cuzner v. California Club, 155 Cal. 303; Moriarity v. State, 122 Tenn. 440; State v. Colonial Club, 154 N. C. 177; Adams v. State, 145 S. W. 940.   (6) The opinion in the former St. Louis Club case should not be followed.   (a) The facts in the agreed statement filed in this case are substantially different from those agreed upon in the old St. Louis Club case, but even if the parties and the facts were the same, this court will not follow its prior decision if the law therein be erroneous.   State ex rel. v. Blair, 245 Mo. 691; Winninghaus v. Trueblood, 149 Mo. 583;

Young v. Downey, 150 Mo. 331; State ex rel. v. Gordon, 231 Mo. 568. (b) Especially is this true when, under such erroneous decision, no complications might arise concerning property rights. State v. Hill, 47 Neb. 539; State v. Savage, 64 Neb. 705. (c) Nor is the court bound by prior decisions on points which should have been but were not considered. Moinet v. Burnham, 143 Mich. 489; Atwood v. Mayor, 144 Mich. 682; Cosgrove v. Wayne County Judge, 144 Mich. 682; Larson v. Bank, 66 Neb. 595. (d) The matters in dispute are not the same. Drainage District v. Tourney, 235 Mo. 80. (e) In the sense that one action may bar the other, the parties are not the same. State ex rel. v. McSpadden, 137 Mo. 628.

*E. T. & C. B. Allen* and *William C. Connett* for respondent Missouri Athletic Club; *A. & J. F. Lee* for respondent St. Louis Club.

(1) The distribution of liquors to members by a bona-fide social club is not a sale within the meaning of the Dramshop Law. State ex rel. v. St. Louis Club, 125 Mo. 308; State v. Myers, 162 S. W. 768; State v. Rose Hill Pastime A. Club, 121 Mo. App. 81; People v. Adelphi Club, 149 N. Y. 5; Klein v. Livingston Club, 177 Pa. St. 224; Cuzner v. California Club, 20 L. R. A. (N. S.) 1095; Moriarity v. State, 25 L. R. A. (N. S.) 1252; State v. Duke, 137 S. W. (Tex.) 654; Manassas Club v. Mobile, 121 Ala. 561; Adams v. State, 145 S. W. (Tex.) 940; State v. Fitzpatrick, 131 La. 1079, 43 L. R. A. (N. S.) 608; State v. University Club, 44 L. R. A. (N. S.) 1028; State v. Austin Club, 89 Tex. 20; Tennessee Club v. Dwyer, 11 Lea, 452; Piedmont Club v. Com., 87 Va. 540; Barden v. Montana Club, 10 Mont. 330; State v. Boston Club, 45 La. Ann. 585; State ex rel. v. McMaster, 35 S. C. 1; Seim v. State, 55 Md. 566. (3) The following considerations distinguished the cases below from the St. Louis Club case: (a) The

distribution of liquors to its members, by a bona-fide social club, where prohibitory or local option laws prevail, has been held to violate such laws. State v. Robinson, 163 Mo. App. 221; State v. Literary Club, 73 Md. 97; State v. Horacek, 41 Kan. 87; State v. Lockyear, 95 N. C. 633; State v. Neis, 108 N. C. 787; State v. Topeka Club, 82 Kan. 756; State v. Kline, 93 Pac. (Ore.) 237. (b) Where the club was a mere sham and a cloak for the retail liquor business, such distribution of liquor was held to be unlawful. State v. Pastime Club, 121 Mo. App. 81; State v. Mercer, 32 Iowa, 405; Rickart v. People, 79 Ill. 85; Com. v. Ewig, 145 Mass. 119; Sothman v. State, 66 Neb. 302; Labor Club v. People, 121 Pac. (Colo.) 120; State v. Kelsey, 83 Conn. 717; State v. Calhoun, 67 W. Va. 666; Russell v. State, 116 Pac. 451. (c) Special provisions in terms including "club" and "club-house" have been held to show an intent to include them. Army & Navy Club v. Dist. of Col., 8 App. D. C. 544; Kentucky Club v. Louisville, 92 Ky. 309; State v. Maryland Club, 66 Atl. 667; Com. v. Tierney, 148 Pa. 552; State v. City Club, 83 S. C. 509. (d) The following cases construed revenue measures: People v. Soule, 74 Mich. 252; South Shore Country Club v. People, 228 Ill. 75; State v. Essex Club, 53 N. J. L. 99; State v. Shumake, 44 W. Va. 490; United States v. Alexis Club, 98 Fed. 725. (e) The following cases, after holding that the word "person" under their dramshop law, included a corporation, decided that a bona-fide club was within their law: Ada County v. Boise Club, 20 Idaho, 421; State v. Minnesota Club, 106 Minn. 515; People v. Soule, 74 Mich. 252. (3) To overrule the St. Louis Club case and then declare acts committed before the decision in the present case unlawful, which, under the St. Louis Club case, were lawful at the time they occurred, would violate the crudest notions of justice. *Ex post facto* law by judicial construction is as pernicious as *ex post facto* legislation. People v. Tompkins, 186 N. Y. 413;

Railroad v. Fowler, 142 Mo. 687; Erbaugh v. United States, 173 Fed. 435; Martin v. United States, 168 Fed. 202; Grubbs v. State, 24 Ind. 295. (4) The Legislature, when it passed the Act of 1891, is presumed to have been familiar with the fact that clubs wherein liquor was furnished had been in existence in the large towns and cities of this State for years. If such clubs tended to disorder or bad morals, the Legislature knew it. This distinctive, open, notorious, long use of liquor was well known to the Legislature, and if they had intended to regulate that use they would easily have found appropriate language in which to express that purpose. By failing to do so they indicated their purpose not to interfere therewith. State ex rel. v. St. Louis Club, 125 Mo. 308; State ex rel. v. Fitzpatrick, 131 La. Ann. 1079, 43 L. R. A. (N. S.) 608; Klien v. Livingston Club, 177 Pa. 224; People v. Adelphi Club, 149 N. Y. 5; Cuzner v. California, 20 L. R. A. (N. S.) 1095. (5) The official construction of this act for generations was that it did not apply to bona-fide social clubs, and is controlling. United States v. Hermanos & Co., 209 U. S. 337; Timmonds v. Kennish, 244 Mo. 328. (6) The Legislature of this State has convened in ten regular sessions since the decision in the St. Louis Club case was handed down. If the construction there given to this statute was not the one intended by the legislative department it will be presumed that the statute would have been so amended as to make effective the purpose of the Legislature in the enactment of these laws, and would have made amenable thereto bona-fide social clubs. McChesney v. Hager, 104 S. W. (Ky.) 715; Railroad v. Railroad, 138 Mo. 597; Strottman v. Railroad, 211 Mo. 255. (7) Since the St. Louis Club decision was published in the official reports of this court there have been two revisions of our statutes and the sections under consideration were continued and re-enacted in each revision. The court will presume that the Legislature

adopted the construction theretofore given the law by this court. Handlin v. Morgan Co., 57 Mo. 116; Camp v. Railroad, 94 Mo. App. 281; Sanders v. Anchor Line, 97 Mo. 30; Ex parte Durbin, 102 Mo. 103; Schawacker v. McLaughlin, 139 Mo. 341; State v. Hamey, 168 Mo. 194; State v. Schenk, 238 Mo. 458. (8) Further evidence of that intention is furnished by the fact that since such decision of this court, the Legislature has repeatedly defeated bills which were introduced for the specific purpose of including bona-fide clubs within the Dramshop Law. Easton v. Courtright, 84 Mo. 36. (9) The circuit attorney is estopped by the solemn declarations of the courts and the Legislature of this State, and by the laches of its executive officers for a period of ten years, from now seeking the forfeiture of the charter of this respondent for its alleged violation of this law. State ex inf. v. Trust Co., 144 Mo. 562; State ex rel. v. Mansfield, 99 Mo. App. 146; State ex rel. v. Westport, 116 Mo. 582; State ex rel. v. Small, 131 Mo. App. 470; State ex rel. v. Huff, 105 Mo. App. 354; State ex rel. v. Water Co., 92 Wis. 496; Com. ex rel. v. Bala & B. M. Turnp. Co., 153 Pa. 47; Com. v. Railroad, 10 Pa. Co. Ct. 129; State v. Bailey, 19 Ind. 453; People v. Williamsburg Turnp. Co., 47 N. Y. 586; People ex rel. v. Bank, 1 Doug. (Mich.) 282.

WALKER, J.—The circuit attorney of the city of St. Louis has instituted two original proceedings in this court in the nature of *quo warranto* for the purpose of forfeiting the charters of two corporations, the St. Louis Club, and the Missouri Athletic Club, because of their alleged misuse and abuse of their respective franchises in having sold, without licenses as dramshop-keepers, intoxicating liquors, and in having violated section 7226, Revised Statutes 1909, in receiving, storing, keeping or delivering as agents or otherwise,

of any other person, intoxicating liquors without having licenses as dramshop-keepers.

The material issues in these cases being identical, varying only as to the manner in which the defenses are presented by counsel in each of the cases, they will be considered together.

These clubs were incorporated at different dates under what is now article 10 of chapter 33, Revised Statutes 1909, the statute authorizing the incorporation of benevolent, religious, scientific, educational and miscellaneous associations. This statute has not undergone any material change through legislation since the incorporation of these clubs; incidentally, its latitude, measured by judicial interpretation, may not inappropriately be likened to that virtue which is figuratively said to cover a multitude of sins. [1 Peter, iv, 8.]

No useful purpose will be served by setting out the pleadings at length. The informations formally charge the respondents with the abuse and misuse of their corporate powers in reference to the matters above stated, and ask a forfeiture of their charters. Their returns confess and avoid as to the charge of selling intoxicating liquors without license; and as to the alleged violation of section 7226, Revised Statutes 1909, that it is invalid, as being unconstitutional. The buildings, appointments, conditions of membership, privileges, government and exclusive restrictions of each club are set forth at length and with particularity. It is pleaded that the matter of the right of these clubs to sell liquor without license has been adjudicated by this court in State ex rel. Bell v. St. Louis Club, 125 Mo. 308, and that the right under this decision has uninterruptedly been exercised by them since the rendition of the opinion in that case in 1894; that efforts have been made at successive sessions of the General Assembly to effect changes in the dramshop law which would require social clubs to take out dramshop licenses, and the failure or refusal of the Legislature to

enact laws of this character is a construction of the dramshop law by the State, represented by its officials, authorizing sales of liquor without license by such clubs. Whereupon, respondents plead that such failure or refusal on the part of the lawmaking power operates as an estoppel upon relator from claiming that the dramshop law applies to bona-fide social clubs; that respondents, relying upon the fact that they have never heretofore been molested in the sale of liquors without license, or in the violation of section 7226, supra, have expended large sums of money in furnishing and equipping their club houses, and that relator, by reason of the nonaction of the Legislature and the failure of the law officers to proceed against them for years after respondents had organized and were in operation as social clubs, should not be heard to complain against them.

Relator's reply in each case is a general denial, and in addition in one it is alleged that the suit pleaded in abatement by respondents (State ex rel. Bell v. St. Louis Club, supra) was brought by an unauthorized person and the proceedings therein were void, and that the facts in that and the instant cases are not identical, and that section 7226, supra, had not been enacted when the Bell case was determined.

Agreed statements of facts detail the character of each club as a social organization, the nature and amount of its expenditures, including the expenditures for intoxicating liquors; the nature and amount of income, including that charged to members and their nonresident guests for intoxicating liquors; the manner in which the club is governed, and numerous other matters not necessary to be set out here. As to the dispensing of liquors, practically the same plan is pursued in each club. If a member desires liquor he orders same and it is served to him in the club; on receiving it he signs a card acknowledging the receipt of same and stating the price; he makes payment for

same within a stated time thereafter. Stress is laid in each statement upon the member receiving the liquor and not paying for it at the time, and that he is not permitted, under the rules, to pay for the liquor when received, but subsequently when he pays for his supplies for the month, and as a part of such supplies; that the same prices are charged members for liquors as are required to be paid at licensed cafes and dramshops for like goods; that the money received by respondents for liquors is mingled with the other funds and used in replenishing the stock of liquors and in purchasing other supplies; that no profit has ever been made by these clubs or paid to members. A complete statement of each club's entire accounts for the preceding year accompanies the recital of the agreed facts.

The questions confronting us are so interrelated that their discussion, with probably some prolixity, becomes necessary to a determination of the issues involved.

I. It is scarcely worth while at this day and time to consume space discussing the character of the liquor

Sale: Intoxicating Liquors by Incorporated Club to Members.

traffic, except to say that early in our judicial history Judge NAPTON, who may well be styled the Story of our jurisprudence, said, in Austin v. State, 10 Mo. 591, that "the sale of intoxicating liquors is by law illegal and is not a privilege of a citizen of this or any other State, and that the right to sell same can only be acquired by complying with the law." Thirty-five years later, with no adverse intimation in the interim, this court reiterated the doctrine announced in the Austin case, supra, and in a *per curiam* opinion in State ex rel. v. Hudson, 78 Mo. 302, said, in addition, that "the license fee exacted of dramshop keepers is not a tax, but a price paid for the privilege of carrying on a business detrimental to public morals, and which the Legislature in the exer-

cise of its police power has the right to prohibit altogether.'' And BURGESS, J., in State v. Seebold, 192 Mo. l. c. 727, said: ''It is fundamental that no one has a natural right to sell intoxicating liquor, because the tendency of its use is to deprave public morals, and to do so without a license from proper authority is unlawful.'' (Citing cases.) So it was held in Higgins v. Talty, 157 Mo. 280, that a dramshop license was a mere permit, not a contract, between the State and the licensee, in which the latter has no vested rights, but is subject at all times to the police power and is revocable at any time the State may see proper to do so for any violation of the dramshop law, whether the license so provides or not.

Other opinions of this court and the courts of appeals add such force to the doctrine announced as repetition and unvarying adherence give to any judicial declaration. The last word on the subject has been so aptly said by WOODSON, J., speaking for this court, in State v. Parker Dist. Co., 236 Mo. l. c. 255, that it may be appropriately incorporated here as follows:

''The authorities also establish the fact that the liquor traffic is not a lawful business, except as authorized by express legislation of the State; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations. It is placed under the ban of the law, and it is thereby differentiated from all other occupations, and is thereby separated or removed from the natural rights, privileges and immunities of the citizen.

''The foregoing enunciations of the courts are based upon the well known fact that intoxicating liquors and the traffic therein, have brought intemperance, poverty and misery upon many of our citizens, and have been a fruitful source of crime on every hand.''

These observations and conclusions are quoted, not as the great Cham of literature said, "to point a moral," but to throw light upon the view askance which has been taken by our courts of the traffic in intoxicants, and as a guide in determining what constitutes a sale of liquor within the meaning of the law. The statute relative thereto reads that: "No person shall, directly or indirectly, sell intoxicating liquors in any quantity less than three gallons, either at retail or in the original package, without taking out a license as a dramshop keeper." [Sec. 7188, R. S. 1909.] Incidentally it may be said in this connection, that while the statute, of which this section is a part, prescribes a penalty for its violation, and that penal statutes are, as a general rule, strictly construed, it has been held here and elsewhere that laws in regard to the sale of intoxicating liquors ought to be so construed as to carry out the true purpose of their enactment (State v. Walker, 221 Mo. l. c. 516, affirming 129 Mo. App. l. c. 374); and in accomplishing this purpose they should be liberally construed. [Seattle v. Foster, 47 Wash. 172; Cox v. Burnham, 120 Iowa, 43; People ex rel. v. Craig, 112 N. Y. Supp. 1142.] Probably the rule in regard to the construction of this class of statutes is best stated in a New York case, Mead v. Stratton, 87 N. Y. 493, in which it is said: "While a statute of this character should not be enlarged, it should be interpreted, where the language is clear and explicit, according to its true intent and meaning, having in view the evil to be remedied and the object to be attained." In addition to the rule in this regard here and elsewhere, section 7222, Revised Statutes 1909, gives us a definite guide as to the construction to be given our dramshop law. Aided by this rule of interpretation, the solution of the question as to what constitutes a sale of intoxicating liquors ought not be a difficult matter. However, at the threshold of a consideration of this case, we are confronted with the ruling of this

court in State ex rel. v. St. Louis Club, 125 Mo. 308, in which it was held by Division Number Two that the sale of liquor by a bona-fide social club not incorporated for profit, to a member, is not a sale within the inhibition of the dramshop law. Of this seeming lion in the path, more anon. Irrespective of this ruling for the nonce, what is a sale within the meaning of the statute? Our own courts have defined a sale of personal property to be a transfer of the absolute or general property in a thing for a price in money. [State v. Wingfield, 115 Mo. l. c. 436; Barrie v. United Rys. Co., 138 Mo. App. l. c. 653.] In acts prohibiting the sale of intoxicating liquors elsewhere the word ''sale'' has been construed in a comprehensive sense to include what is known as barter and exchange. [James v. State, 124 Ga. 72; Howell v. State, 124 Ga. 698; Coulter v. Portland Trust Co., 20 Ore. 469.] . Justice GRAY of the United States Supreme Court, in Iowa v. McFarland, 110 U. S. 471, 28 Fed. 198, said that ''A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent;'' and Benjamin in his admirable treatise has defined a sale by pointing out its prime essentials; to constitute a valid sale, there must, he says, be a concurrence of the following elements, viz: (1) parties competent to contract; (2) mutual assent; (3) a thing, the absolute or general property in which is transferred from the seller to the buyer; and (4) a price in money paid or promised therefor. [Benjamin on Sales, secs. 1, 2.] Without unduly extending this discussion, what elements necessary to a sale do we find in the instant case? First, there is present the parties, a seller and a buyer—the one an artificial entity, it is true, but having a legal existence, and capable of contracting; the other, a natural person, and although he is buying from the artificial person and is enabled to buy by reason of his membership or as a shareholder, he has no such individualized ownership in the con-

crete property of the corporation as will enable him to legally appropriate it except by purchase; second, we find here a power and a purpose to sell on the one part, and a willingness to buy on the other, thus constituting all the requisites of mutual consent; third, liquor, the thing being sold, is never absent from the exchange, and, being personal property, is capable of transfer from the seller to the buyer; and fourth, also ever present in the transaction, is the price agreed to be paid by the buyer when he signs the steward's slip, receives the liquor and agrees to pay for same when he settles for other supplies. In the face of the facts it seems to us that the citation of authorities is not necessary to convince the impartial mind that here are embraced all the essentials of a valid sale. But a litigant is entitled at the hands of a court to a dignified consideration of every serious contention; and, although it may, to some minds, seem finical and trifling with words to claim that a club member to whom liquor is delivered under the facts stated, is not a party to a sale, but is simply appropriating at his will a part of his own property, the contention is entitled to a review. Light is sometimes thrown on a matter under investigation by an interrogatory, and we, therefore, ask: If the buyer here is simply appropriating his own property, and the club is not selling same, why follow the farcical formality of keeping an account of each transaction and requiring the purchaser to pay for what he has received at agreed intervals? If we mistake not, although it may not be in the record, a condition of membership requires payment for all supplies received. The easier and the simpler plan, and one which would doubtless be pursued if the liquor dispensed was the common property of the members, would be for each individual to order as he willed, without the then useless procedure incident to an ordinary sale. But, as a matter of fact, the property of an incorporated company, regardless of the article of

the statute under which it is organized, is not held in common by the members or shareholders, but is owned by the artificial person which the law has permitted to be created, the prime purpose of whose creation is to enable it to contract and to hold property in some form for some purpose. This seems too elementary to waste words in its discussion. A few illustrations may, however, help to emphasize the unsoundness of this contention of respondents. Would it be seriously contended that a member of an incorporated religious organization could, at will, appropriate as his own the communion table or the vessels of the altar; or that a member of a library association could take as his own such books as suited his taste and as he deemed represented his interest in the institution; or that a shareholder in a manufacturing company could detach for his personal use such portions of the machinery as he willed to take; or that the owner of stock in a railroad company, or other carrier, upon its passing its dividends, as sometimes occurs, after a series of lean years and adverse legislation, could appropriate such portions of its portable property as he deemed sufficient to cover his investment? None the less absurd is the contention that a member of an incorporated social club, although he contracts to buy and does buy, is not consummating a sale with the club when liquor is delivered to him under the facts detailed, but is simply appropriating to himself his portion of the common property. If, therefore, the foregoing reasoning is sound, and the illustrations are applicable, we are justified in the conclusion that the legal essentials of a sale of liquor are the same as in the transfer of other personal property, save that liquor can only be sold under the limitations prescribed by the statute. This conclusion finds ample support in other jurisdictions where statutes are in force substantially identical with that of Missouri.

261Mo38

In Alabama a transaction whereby a bona-fide incorporated social club sells liquor to one of its members is held to be a sale within the meaning of the law prohibiting the sale of liquors without license. [Beauvoir Club v. State, 148 Ala. 643.]

In Colorado it is held that a social club which dispenses liquor to its members at a price fixed by its managers violates a local ordinance prohibiting the sale of such liquors, even though they are provided simply as an incident to the entertainment of the members, the transaction being held to be a sale. [Manning v. Canon City, 45 Colo. 571; Lloyd v. Canon City, 46 Colo. 195.]

In the District of Columbia a like ruling, under a similar state of facts, has been made, the court observing that it is immaterial for what purpose the club was formed, or whether the sale was made for profit or was but an incident to the cultivation of social relations between the members. [Army and Navy Club v. District of Columbia, 8 App. D. C. 544.]

In Georgia it is held that the admission only of members to club rooms, and the fact that the selling and drinking of intoxicating liquors, was only an incident and not the main object of the incorporation, will not make the place where the liquors are dispensed and drunk the less a tippling house within the meaning of a statute making penal "the keeping open of tippling houses on Sunday." [Mohrman v. State, 105 Ga. 709.]

In Illinois it is held to be immaterial that liquors are sold by a corporation club to its members for a price no more than sufficient to cover cost and service, or whether the organization is one in good faith or a mere subterfuge to evade the statute, as in either case the transaction is a sale within the meaning of the statute requiring a license. [People v. Law and Order Club, 203 Ill. 127, 62 L. R. A. 884.] A later Illinois case (South Shore Club v. People, 228 Ill. 75, 12 L.

R. A. (N. S.) 519, 119 Am. St. Rep. 417) is peculiarly appropriate in view of what we have said in regard to ownership. The court in that case said: ''The liquor belonged to the corporation as a legal entity, and no member owns any share of the liquor as a tenant in common or otherwise. An association organized merely for social, literary, scientific or political purposes, although not incorporated, is not a partnership. A member of such an association has no individual right or interest in the property, and owns no proportionate share of it, but only has a right to the joint use so long as he continues to be a member. Even if they were tenants in common, a transfer of a specific part of the property to one for a stipulated price would be a sale.''

In Maryland the law regulating the sales of liquors was held to apply to private clubs when liquor is sold to members, even without a profit. [Conoc. Club v. State, 116 Md. 317.]

In Michigan it is held that a law requiring that licenses should be obtained by retail liquor dealers and taxing the business of liquor selling, wherever found or by whom carried on, reaches a club house or private house, as well as a saloon or tavern, and includes all persons engaged in such business. [People v. Soule, 74 Mich. 250.]

In Minnesota, in a case which reviews a large number of authorities, it is held that a club or social organization chartered under the laws of the State, is a ''person'' within the meaning of the license laws, and that the dispensing of liquors by it to a member constitutes a sale in violation of law, unless protected by license. [State ex rel. v. Minnesota Club, 106 Minn. 515.]

The Supreme Court of Mississippi, in discussing a case involving the right of a social club to dispense liquor to its members, not for profit, but without license, said: ''We unhesitatingly adopt as sound the views of those courts which have held that such a de-

vice as was resorted to by appellant in disposing of
. . . liquor was a violation of the law against un-
licensed retailing. . . . It must be so unless an as-
sociation of persons may lawfully do what none of the
individuals could, and it would be a reproach to the
law if this were so." [Nogales Club v. State, 69 Miss.
218.]

In New Jersey a club which disposes of liquors to
its members, not to evade the law or to make a profit,
is held to be subject to an ordinance imposing a pen-
alty for selling liquor without license. The court said:
"It is wholly immaterial, and not a legitimate subject
of inquiry, whether an intention to violate or evade the
law was present or not. Intent constitutes no part
of the offense; the simple question is presented, wheth-
er the act expressly inhibited has been done? If so,
the presumption of wrongful intent is absolute and
cannot be controverted." [Newark v. Essex Club, 53
N. J. L. 99.]

In Oregon the dispensing of liquors by a club to
its members is held to be a sale. [State v. Kline, 50
Ore. 426; Bachelors' Club v. Woodburn, 60 Ore. l. c.
341.]

In Washington it is held that the transaction is a
sale under an ordinance forbidding the sale or dis-
posal of liquors without license, the court saying in
effect that liquors owned by a club and transferred to
a buyer for a consideration is a sale, and it is imma-
terial that the buyer is a member and as such has an
interest in the property. [Spokane v. Baughman, 54
Wash. 315.]

In West Virginia the disposal of liquors by a club
to its members is within the statute requiring a license,
the statute being held to be broad enough to permit
no shift or device to defeat its purpose, no matter
whether the club is social, literary or otherwise. [State
v. Shumate, 44 W. Va. 490.]

*Contra.* In California (Cuzner v. California Club, 155 Cal. 303), Massachusetts (Comm. v. Baker, 152 Mass. 337; Comm. v. Ewig, 145 Mass. 119), Montana (Barden v. Montana Club, 10 Mont. 330), New York (People v. Adelphi Club, 149 N. Y. 5), Pennsylvania (Klein v. Livingston Club, 177 Pa. St. 224), South Carolina (Columbia Club v. McMaster, 35 S. C. 1), Tennessee (Tennessee Club v. Dwyer, 11 Lea, 452; Moriarty v. State, 122 Tenn. 440), Texas (Finn v. State, 38 Tex. Cr. 75), and in Virginia (Piedmont Club v. Comm., 87 Va. 540) it is held, on the basis of the bona-fides of the clubs, as in State ex rel. v. St. Louis Club, supra, that the distribution of liquors only to members is not a sale within the meaning of the liquor laws.

In the foregoing we have, so far as possible, included for and against the right of sale only cases involving bona-fide social clubs in States not under prohibition or local option laws, and not those in which the clubs were expressly prohibited from selling. The cases discussed disclose a lack of harmony in regard to what constitutes a sale, the majority being, as above indicated, against the doctrine announced in the St. Louis Club case, supra, and others of like tenor. The contrariety of these opinions may be due, to some extent, to variant statutes or to differences in the facts. If this be true, it lessens their force, which with us is, at best, but persuasive, except as they support the conclusion reached in the St. Louis Club case. The conclusion in this case we do not regard as sound or consistent in not requiring a fair and uniform enforcement of the law in regard to the sale of intoxicating liquors; and in so far as it holds that an incorporated social club is not a person within the meaning of the law in regard to corporations, and that the dispensing of liquors by it to its members is not a sale, it is overruled.

II. The dispensing of liquors by social clubs to their members having been by reason and precedent

established as sales, under what authority can their dispensation be conducted in the absence of express authority therefor in the statute?

Respondents are corporations organized to advance, by social intercourse and athletic pursuits, the bodily and mental health of their members, and by friendly exchange of views and discussions to advance the commercial prosperity of the city of St. Louis, and to obtain a place for the common and friendly intercourse of such members with each other. So say their returns, supplemented by like declarations in the agreed statements of facts. That respondents have no express power to sell liquor is admitted unless it be claimed that the ruling in the St. Louis Club case operated to confer this power upon them as a species of judicial legislation; as we understand their contention, however, it is not so claimed, but that the construction given the dramshop law in that case simply emphasized an implied power which the clubs possessed, in the absence of an express prohibition. The doctrine of implied power as applied to corporations demands our attention. It will be recalled that Chief Justice MARSHALL said in the Dartmouth College case (4 Wheat. (U. S.) 518, 636) among other things that have become maxims, that "a corporation being the mere creature of the law possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence;" and the Supreme Court of Minnesota has held that the same rule is applicable to articles of incorporation which are analogous to a charter (Gould v. Fuller, 79 Minn. 414); so that by express judicial declaration the doctrine as to the limitation of the powers of a corporation within the instrument of its creation has been made to apply to every class of incorporated association, whether it be organized for business, moral, intellectual or benevolent purposes or to promote social

*[margin note:]* Corporations: Implied Powers.

intercourse. Incidental powers, as the term is employed by Chief Justice MARSHALL, mean such as are directly and immediately appropriate to the execution of the powers expressly granted, and exist only to enable the corporation to carry out the purpose of its creation. [Hood v. Railroad, 22 Conn. 1; People v. Chicago Gas Trust Co., 130 Ill. 268; State ex rel. v. Newman, 51 La. Ann. 833.] Such powers are not invoked by respondent, however, and their discussion is superfluous. But the implied powers are of moment. They are defined to be those possessed by a corporation not indispensably necessary to carry into effect others expressly granted, and comprise all that are appropriate, convenient and suitable for that purpose, including, as an incidental right, a reasonable choice of the means to be employed in putting into practical effect this class of powers. Broad as this definition seems, and it is the resume of an exhaustive review of many cases by eminent text-writers, we find it nowhere more lucidly and comprehensively considered than by BURGESS, J., speaking for this court in State ex inf. Crow v. Lincoln Trust Co., 144 Mo. l. c. 583 et seq., where, after reviewing our own cases on this subject, as well as those of other jurisdictions, the substance of the court's conclusion is that it is a settled rule of construction that legislative grants of power to corporations, public or private, only include such rights and powers as are clearly comprehended within the words of the act of their creation or may be derived therefrom by necessary implication, regard being had to the objects of the grant; and if ambiguities or doubts arise, the terms used in the statute must be resolved in favor of the public; that if the powers conferred are expressly enumerated, this, under the maxim of *expressio unius, etc.,* implies the exclusion of others not enumerated. GRAVES, J., speaking for this court in Hanlon Mill. Co. v. Miss. Valley Trust Company, 251 Mo. l. c. 575, said, in substance: That a corporation pos-

sesses only such powers expressed in or that may be fairly implied from the statute of its creation; that powers enumerated imply the exclusion of all others; and that any doubt or ambiguity respecting the possession of any particular power arising out of the terms of the statute is to be resolved against its possession, or, as BURGESS, J., aptly said in the Lincoln Trust Co. case, supra, "It must be resolved in favor of the public."

The respondents were incorporated, as shown by the pleadings and the agreed statement of facts, under that article of the law of corporations of this State (Art. 10, chap. 33, R. S. 1909) providing for the formation of benevolent, religious, scientific, educational and miscellaneous associations. To the purist their incorporation under either of these classifications might seem to do violence to the usual and well accepted meaning of the words; but judicial interpretation, which can and oftentimes does accomplish what derivation and usage cannot, has declared in State ex rel. v. Lesueur, 99 Mo. 552, that a social club, organized as these were, is included in one of the classes named, or may be incorporated under said article 10 of chapter 33, supra. To this article, therefore, we must look for the express or implied powers possessed by respondents. Section 3435 of article 10 supra, defines the purposes for which associations may be incorporated under said article whose organization is clearly authorized thereunder and those purposes do not depend for their existence on judicial construction; but in the case of social clubs there is no declaration of express powers, their incorporation having been authorized by judicial interpretation resort must be had to that general knowledge necessarily possessed by the courts in common with individuals as to the nature and purpose of associations of this character to enable the full extent of their powers to be determined. Guided, therefore, by this knowledge, and the declara-

tions as to respondents' purposes in their articles of incorporation, it may reasonably be concluded that they are clothed with power to do whatever may be necessary, not only to their existence but to promote the prosperity of organizations of this character and the pleasure and improvement of the membership not contrary to public policy or in violation of the law. So extended is this field that a speculation of the powers included therein would be an impossibility. Respondents contend that the dispensing of intoxicating liquors is included; this, upon the theory—regardless of what may have been said in cases so holding—that alcohol in one or all of its many forms as a beverage is necessary for the promotion of social intercourse in that it tends, while loosening the reins of fancy, to strengthen the bonds of good-fellowship. Its use at the festal board, or after the heat of the combat or the jousts of the tourney, or when "two auld cronies meet again" or as a "wee deoch an doris" has been chronicled in history sacred and profane, and oftentimes told in story and in song. To say more would savor of pedantry. Despite all of this, and leaving out of consideration any discussion as to its moral or hygienic effect, as out of place in legal opinion, we find that the framers and interpreters of our law from the dawn of our jurisprudence, both here and elsewhere, have regarded liquor as an Ishmaelite among the products of man's ingenuity, and have placed its sale under the ban of carefully worded restrictions. It no sooner creeps out of the still, the wine press or the brewing vat than the exciseman demands tribute for its being; and before it can be vended taxes *ad valorem* and for the privilege of sale must be paid; but this is not all, upon leaving the warehouse of the wholesaler, the retailer, before dispensing it, must take out a license as a dramshop-keeper. [Sec. 7188, supra.] This is an individual privilege which can only be granted to "a law-abiding, assessed tax-paying male citizen over

twenty-one years of age" (Sec. 7191, R. S. 1909; State ex rel. v. County Court, 66 Mo. App. 1. c. .100; State ex rel. v. Page, 107 Mo. App. 1. c. 216); and it cannot be granted to a partnership (State ex rel. v. Scott, 96 Mo. App. 620), nor to a corporation, because the latter does not possess the requisites expressly required of an applicant, viz.: Age, character and sex—reaching its majority when its incorporation is effected, its age cannot be measured by years; being intangible it can have no character, and for a like reason more materially expressed, having no body to be kicked it is sexless. It, therefore, lacks three out of the four statutory requisites essential to a qualified applicant for a dramshop license.

By necessary and inevitable exclusion, therefore, it being impossible, under the law, for social clubs to procure licenses, and the sale of liquor being a limited privilege, no implied or other power exists authorizing corporations of this character to make sales. Further, an implied power in a corporation to do an unlawful act cannot exist; and if liquor be sold without license over a mahogany table, in glass of finest crystal, under a silken canopy in a palace, it is none the less a crime, under a fair and impartial interpretation of the law, than an unauthorized sale over a deal board in a hovel that would put "Shanahan's ould Shebeen" to shame.

The absence of express powers from the statute which has been held to authorize the incorporation of social clubs, under that portion of the law cited by respondents as giving color to an implied power to sell liquors, is wholly inapplicable to that class of associations. The supplemental clause of section 3435, supra, relied upon by respondents, after enumerating the specific classes that may be incorporated, provides (italics are ours) that "any association, society, company or organization which tends to the public advantage *in relation to any or several of the objects above enumerated, and whatever is incident to such objects,*

may be created a body corporate." The subjects of incorporation enumerated are, as we have seen, benevolence, religion, science, and education, and while it is nowhere expressly contended by respondents that social clubs partake of the nature of either of these classes, their incorporation having been authorized under the ruling in State ex inf. v. Lesueur, supra, it is reasoned by analogy that they may do whatever tends to the public advantage in relation to any of the objects above enumerated. This argument proceeds upon the covert assumption, which is carefully avoided in express terms, that a social club is organized for one of the purposes expressly mentioned, which it will require no argument to prove in the case of respondents to be a sophism, although the right to a charter was recognized in the Lesueur case upon the ground that the applicant for corporate existence possessed educational features. Incidentally, and as a mere *dictum*, so far as the instant cases are concerned, may not the ruling in the Lesueur case be properly limited to the incorporation only of such social clubs as are shown by their articles to possess some of the features characteristic of the classes named?

But we wander afield. To render respondents' contention applicable it must be further assumed that the sale of liquors, concretely stated, is related to either benevolence, religion, science or education, or that it is incident to one of such objects. A rather unusual relationship, to say the least, and if the sale of liquors is, as claimed, "an incident to the maintenance of the clubs," then as we have iterated and reiterated in the discussion of other phases of this question, they draw their substance, in part at least, from violations of the law.

III. Respondents contend that the statute in regard to the sale of intoxicating liquors having received judicial construction by the highest court in this

**Judicial Construction: Part of Statute.**    State, such construction became as much a part of the statute as if written into it at the time of its enactment. As a general proposition, this is a correct statement of the rule (State v. Hamey, 168 Mo. l. c. 194; Sanders v. St. L. & N. O. Anchor Line, 97 Mo. l. c. 30; Handlin v. Morgan Co., 57 Mo. l. c. 116), with this limitation, that the law as construed becomes a part of the original text only when such construction will not affect contract or property rights. [Douglass v. County of Pike, 101 U. S. l. c. 687; Green v. Neal, 6 Pet. l. c. 297; Shelby v. Guy, 11 Wheat. l. c. 368; Farrior v. N. E. Mortgage Security Co, 92 Ala. l. c. 179.] This limitation is a sufficient reason for the rule and attests its justice and wisdom. The case of Railroad v. Fowler, 142 Mo. l. c. 687, cited by respondent, is not at variance with this doctrine, because it declares that the construction there placed on the statute was in the protection of certain rights. The facts in the matter here involved are not parallel. While it was held in the St. Louis Club case, supra, that the dispensing of liquor at retail by the club was not a violation of the dramshop law, the right to sell under this permissive construction of the statute did not involve any contract or vested right—the sale of liquor being a mere privilege conveys no such right until the law regulating same has been complied with and a license granted, when the right to the enjoyment of the privilege assumes the nature of a contract which cannot be abrogated without sufficient cause. [State v. Parker Distilling Co., 236 Mo. 219; Higgins v. Talty, 157 Mo. 280; State ex rel. v. Baker, 32 Mo. App. 98.] There is no claim that any contract rights are impaired, but that any interference with the uninterrupted operation of the dramshop law as construed in the St. Louis club case will, in respondents' own words, "violate the crudest notions of justice." This conclusion, like that of Hamlet in

his colloquy with Polonious in regard to the cloud (*Hamlet,* act 3, scene 2) is dependent wholly upon the vantage ground from which we view justice. If a social club, existing only by judicial interpretation, be entitled to rights and privileges not accorded to a natural person, and which the latter can acquire only under the limitations of a restrictive statute, then there may be some force in respondents' conclusion, otherwise not. While a proper regard should, at all times, be entertained for precedent when it does not violate principle, there should be no hesitancy in overruling one which, in our opinion, places a strained construction upon a plain statute and thereby works manifest injustice. Respondents' plaint, reduced to its simples, is that the St. Louis Club case should not be overruled, because thereunder respondents have enjoyed privileges not accorded to others. This view does not meet with our approval. Nor are we impressed with the soundness of the contention that because two decades or more of calendar time have elapsed since the rendition of the opinion in the St. Louis Club case, and no succeeding Legislature has sought to render the dramshop law more definite and inclusive, this perforce is a legislative construction which estops the relator in these proceedings. The general rule, without further encumbering this opinion with authorities, is that a practical construction placed upon a law by legislative acquiescence therein will not be lightly questioned, provided it is not allowed to defeat the manifest purpose of the statute—this last, we have endeavored to make clear, has been done by the judicial construction of the dramshop law under which respondents exercise the privilege they are now contending for. As to subsequent legislative action, none was necessary, because the statute is sufficient and only awaited enforcement to effect the purpose for which it was enacted.

In view of the foregoing we would be slow to intimate, much less declare, especially in view of the facts in the instant cases, that legislative inaction would suffice to estop relator from the enforcement of a criminal statute. Generally there is no limit to the power of a Legislature to enact laws regulating or prohibiting the sale of intoxicating liquors; neither the State nor the Federal Constitution attempts to narrow this discretion. And the action or inaction of one Legislature, while it may be persuasive, has no binding force upon a succeeding one, and, therefore, should not influence the courts in construing the law. [Boyd v. Alabama, 94 U. S. 645; Metro. Board of Excise v. Barrie, 34 N. Y. 657; Moore v. State, 48 Miss. 147.]

The foregoing sustains the contention of relator that respondents in the sale of intoxicating liquors have abused their corporate powers as social clubs, and any discussion as to the application or validity of section 7226, Revised Statutes 1909, is unnecessary.

In view of what has been said, we are of the opinion that each of said respondents, to-wit, the St. Louis Club and the Missouri Athletic Club, has in the sale of intoxicating liquors abused and misused the authority, franchises and privileges conferred upon them by law, and that judgments of forfeiture be entered herein dissolving each of said associations—the ousters to be suspended so long as said clubs in good faith desist from such sales. And it is so ordered. All concur, except *Graves, J.,* who concurs in first paragraph and the result.